UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

BILLIE LOU MILLER                              CIVIL ACTION NO. 22-cv-335

VERSUS                                         JUDGE TERRY A. DOUGHTY

KAREN J MILLER                                 MAGISTRATE JUDGE HORNSBY

**REPORT AND RECOMMENDATION**

**Introduction**

Travis Miller died in 2020. His daughter, Kay Miller, filed a succession proceeding to probate his will, and she was confirmed as executrix. In her capacity as executrix, Kay sold a Rolls Royce. Travis' widow, Billie Lou Miller, filed within the succession a summary proceeding petition that alleged Travis had lawfully donated the car to Billie before his death. Billie's petition named as defendant Kay Miller, both individually and in her capacity as executrix of the estate.

Kay removed the summary proceeding—but not the succession proceeding in which it was filed—on the basis of diversity jurisdiction. Kay alleged that she is a citizen of Louisiana, Billie is a citizen of Texas, and the car at issue was valued at $450,000. Before the court is Billie's Motion to Remand (Doc. 9) on the grounds that (1) removal violated the forum-defendant rule, (2) the court lacks subject matter jurisdiction because of the probate exception to diversity jurisdiction, and (3) the Colorado River and Burford abstention doctrines warrant remand. For the reasons that follow, it is recommended that the motion to remand be denied.

**The Allegations**

Billie commenced this action by filing in the succession proceeding a petition titled Summary Proceeding for Declaratory Judgment and for Damages. Billie alleged that she and Travis were married in 1997 and lived together in Shreveport for about 23 years. Billie was 19 years younger than Travis, who had two adult daughters from a prior marriage, and Billie had issues with members of Travis' family, including Kay. Billie and Travis began living separate and apart in February 2020, but they remained in contact and communication, and Billie had access to the marital home where Travis lived. Petition, ¶¶ 1-15.

Several days before Travis' unexpected death, he told Billie that he had a surprise for her and asked her to come to his home. There, in front of family members, Travis presented Billie with a 2018 Rolls Royce Phantom, which was similar to a model that Travis had recently bought for himself. He delivered both sets of keys to Billie. She took the car to her house and realized that her carport was too small to protect the car. Billie arranged with Travis to store the car in his garage until she could build a suitable garage at her home. ¶¶ 16-28.

Travis died several days later. According to Billie, Kay quickly changed the locks on Travis' house, refused to allow Billie to participate in funeral preparation, and did not acknowledge her in obituaries. A little over a week after Travis' death, Kay filed a petition to open his succession. She was soon confirmed as executrix. ¶¶ 29-33.

Billie attempted to recover her personal assets, including the Rolls Royce, from the marital home. Kay rebuffed her efforts. Billie hired counsel, who learned from counsel for Kay that Kay, acting as succession representative, had sold the Rolls Royce to the Hebert Town & Country car dealership. Although Travis presented the car to Billie, the registration had remained in the name of Travis Miller, which allowed Kay to sell the car without Billie's involvement. Billie demanded that Kay recover the car and return it to her, but counsel for Kay advised that he had determined that the Rolls Royce had been sold and was unretrievable. ¶¶ 34-41. Billie asked the state court to declare that Travis perfected a valid inter vivos donation of the Rolls Royce to Billie, find that Kay unlawfully converted Billie's property when she sold the car, and award Billie damages for the value of the car plus general damages. ¶ 46.

**The Forum-Defendant Rule**

The parties agree that Billie, the plaintiff in the summary proceeding, is a citizen of Texas. Kay is a citizen of Louisiana in her individual capacity. She is also a citizen of Louisiana in her capacity as succession representative because Travis was a citizen of Louisiana when he died. 28 U.S.C. § 1332(c)(2) (legal representative of an estate of a decedent is deemed to be a citizen only of the same state as the decedent). The proceeding seeks well in excess of $75,000, so the basic elements of diversity jurisdiction are present.

Billie argues that removal was nonetheless improper because 28 U.S.C. § 1441(b)(2) states that a civil action removable solely on the basis of diversity jurisdiction "may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." Kay, the defendant in

the summary proceeding, is a citizen of the forum state, but she responds that this was a permissible "snap removal" because the notice of removal was filed before she was served.

The Fifth Circuit has held: "A non-forum defendant may remove an otherwise removable case even when a named defendant who has yet to be 'properly joined and served' is a citizen of the forum state." Texas Brine Co. v. American Arbitration Ass'n, 955 F.3d 482, 487 (5th Cir. 2020). This case is a little different because a forum defendant removed this case. Texas Brine's holding did not directly address this situation, but it suggested it would approve such a removal when it wrote:

> We agree with a comment made by the Second Circuit: "By its text, then, Section 1441(b)(2) is inapplicable until a home-state defendant has been served in accordance with state law; until then, a state court lawsuit is removable under Section 1441(a) so long as a federal district court can assume jurisdiction over the action."

Texas Brine, 955 F.3d at 486, quoting Gibbons v. Bristol-Myers Squibb Co., 919 F.3d 699, 705 (2d Cir. 2019) (affirming snap removal filed by forum defendants). Several district courts in the Fifth Circuit have since applied Texas Brine to allow forum defendants to snap remove cases. See, e.g., Chastain v. New Orleans Paddlewheels, Inc., 2021 WL 5578443 (E.D. La. 2021) (collecting cases); Armstrong v. Sw. Airlines Co., 2021 WL 4219706 (N.D. Tex. 2021) (collecting cases). Billie acknowledges this authority and does not seriously challenge its applicability.

Billie argues that the snap removal process was not available because in-state defendant Kay was served, by email to her attorneys, before removal. The prayer of the summary petition asked that Kay "be cited and served" with the filing. The filing ended with the traditional "please serve" request. It asked that the sheriff serve Kay in her

capacity as executrix through attorney Deryl Medlin, and in her individual capacity through attorney Reid Jones. The filing also included a certificate of service that it had been served on Medlin and Jones by separate emails sent on the date of filing. The timeline is as follows:

| | |
|---|---|
| October 12, 2020 | Kay opens Travis' succession by filing a petition for probate. |
| February 1, 2022 | Billie files summary proceeding and requests that Kay be cited and served. Billie emails a copy of the filing to attorneys Jones and Medlin. |
| February 2, 2022 | Kay removes the summary proceeding to federal court. |
| February 8, 2022 | Kay is served by the sheriff with a citation and certified copy of the state court filing. |

The two emails to counsel are the only potential pre-removal service on Kay that would thwart the snap removal. Louisiana law must be reviewed to determine whether either of the emails was valid service. Louisiana Code of Civil Procedure Article 1312 provides that no service on the adverse party need be made of certain types of filings, none of which are relevant here. The Article states that, other than those exceptions, "every pleading subsequent to the original petition shall be served on the adverse party as provided by Article 1313 or 1314, whichever is applicable." Article 1313 allows for email service of some filings. It provides:

> A. Except as otherwise provided by law, every pleading subsequent to the original petition, and every pleading which under an express provision of law may be served as provided in this Article, may be served either by the sheriff or by:

****

>    (4) Transmitting a copy by electronic means to counsel of record, or if there is no counsel of record, to the adverse party, at the number or addresses expressly designated in a pleading or other writing for receipt of electronic service. Service by electronic means is complete upon transmission but is not effective and shall not be certified if the serving party learns the transmission did not reach the party to be served.

Article 1314 provides that a pleading that is required to be served, but which may not be served under Article 1313, must be served by the sheriff.

Billie argues that her filing that initiated the summary proceeding within the succession was "subsequent to the original petition" (with the original petition being the petition for probate), so it was validly served on Kay by the email to her counsel. Kay responds that Billie's filing, which added new parties, was more in the nature of an original petition, a petition in intervention, or other incidental demand for which state law would require service by the sheriff. The filing does not appear to fit squarely within any Louisiana procedural category, and neither side cites authority that squarely holds how such a filing must or may be served.

Kay argues that even if the petition could be served by email, the emails sent in this case were not valid service because they were not sent to "addresses expressly designated in a pleading or other writing for receipt of electronic service," as required by Article 1313(A)(4). One of the emails was directed to attorney Reid Jones as counsel for Kay as an individual. Jones represents that he never appeared as counsel of record in the succession, so there is no pleading in the state court case in which his email address appeared. Doc. 13, p. 7 n. 9. The other email was addressed to attorney Deryl Medlin as counsel for Kay as executrix. Kay represents that Mr. Medlin's signature block in

pleadings filed in the succession did not contain an email address. Id. This is evidenced by the state court record filed with this court at Doc. 6. Medlin's signature blocks on filings at pages 2 & 25 do not include an email address.

Billie states in her reply (Doc. 14) that Mr. Medlin consented to service via email during a telephone conversation with counsel for Billie on or around January 14, 2022. No affidavit or written confirmation is offered to support this assertion. In any event, the forum-defendant rule would bar a snap removal only if Kay were "properly joined and served" as a defendant before removal. When the Supreme Court looked to the removal trigger in 28 U.S.C. § 1446(b) that is based on "service or otherwise" of the initial pleading, the Court rejected arguments that delivery of a courtesy copy or other informal service would suffice as "service" under the statute that would trigger the removal period. Instead, formal service valid under state law was required. Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 119 S.Ct. 1322 (1999). The undersigned finds that formal service is likewise required to trigger application of the forum-defendant rule and prevent a snap removal. It has not been sufficiently established that the email to Mr. Medlin, even though purportedly made based on an oral agreement (details unknown) to accept it, satisfied the requirements of service that would be enforceable under state law. See Armstrong v. Southwest Airlines Co., 2021 WL 4219706 (N.D. Tex. 2021) (motion to remand snap removal denied when plaintiff did not demonstrate that certified mail service on forum-defendant fully complied with state law). Accordingly, the forum-defendant rule did not bar removal in this case.

**The Probate Exception**

Kay argues that the court should remand the case for lack of subject matter jurisdiction based on the probate exception to diversity jurisdiction. Under the exception, a federal court has no jurisdiction to probate a will, administer an estate, or disturb possession of property in the custody of a state court, but the federal court does have jurisdiction over other related matters. In Markham v. Allen, 66 S.Ct. 296 (1946), the federal alien property custodian sued in federal court against an executor and heirs to an estate and obtained an order vesting in the custodian all interests of German legatees so that the custodian was entitled to the entire net estate. The federal appellate court ordered the case dismissed for lack of jurisdiction, but the Supreme Court held that federal jurisdiction was properly invoked. It stated:

> It is true that a federal court has no jurisdiction to probate a will or administer an estate ... . But it has been established by a long series of decisions of this Court that federal courts of equity have jurisdiction to entertain suits 'in favor of creditors, legatees and heirs' and other claimants against a decedent's estate 'to establish their claims' so long as the federal court does not interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in the custody of the state court.

Markham, 66 S.Ct. at 298, quoting Waterman v. Canal-Louisiana Bank & Trust Co., 30 S.Ct. 10, 12 (1909). Markham next described the limited scope of the probate exception:

> [W]hile a federal court may not exercise its jurisdiction to disturb or affect the possession of property in the custody of a state court, … it may exercise its jurisdiction to adjudicate rights in such property where the final judgment does not undertake to interfere with the state court's possession save to the extent that the state court is bound by the judgment to recognize the right adjudicated by the federal court.

Markham, 66 S.Ct. at 298.

More recently, in Marshall v. Marshall, 126 S.Ct. 1735 (2006), the Court expressed concern that some lower courts have read Markham to block federal jurisdiction over a range of matters beyond probate of a will or administration of an estate. The Court read the "interference" language in Markham to reiterate the general principle that when one court is exercising *in rem* jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the same *res*. The Court explained:

> Thus, the probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction.

Marshall, 126 S.Ct. at 1748. The Marshall case involved a probate proceeding in Texas state court. A tort claim asserted in a California federal bankruptcy court resulted in a multi-million dollar judgment against the beneficiary of the Texas estate plan. The federal claimant did not ask to probate or annul a will, nor did she seek to reach a *res* in the custody of the state court. Her suit for an *in personam* judgment against the Texas heir was, therefore, within the jurisdiction of the federal court.

The Fifth Circuit applied these principles in Curtis v. Brunsting, 704 F.3d 406 (5th Cir. 2013) when the beneficiary of a trust, funded in part by pour-over provisions in two wills, filed a diversity complaint in federal court against the trustees for breach of fiduciary duty. The beneficiary alleged that the trustees misappropriated trust property, failed to provide an accurate accounting, engaged in fraud, and the like. She sought compensatory damages and a restraining order against wasting of the estate. The district court dismissed

the case for lack of subject matter jurisdiction, concluding that it fell within the probate exception. The Fifth Circuit reversed based on <u>Markham</u> and <u>Marshall</u>. The Texas probate proceedings were ongoing, but nothing suggested that the probate court had custody or *in rem* jurisdiction over the trust. The case fell outside the scope of the probate exception.

Billie's tort claim for conversion of a car also falls outside the probate exception. Her summary proceeding does not seek to probate or annul a will, nor does it ask the federal court to reach a *res* in custody of the state court. The Rolls Royce has been sold and is reported to be unretrievable; the state court is not exercising *in rem* jurisdiction over the car. Billie asks this court to declare the donation of the car to her to be valid, find that Kay's transfer of the car to a dealership was an improper conversion, and award damages to Billie for the fair market value of the car plus general damages. The claim is asserted against Kay individually and in her capacity as executrix, so it could have an effect on the estate. But <u>Markham</u> recognized that the federal courts have jurisdiction to entertain suits in favor of creditors and other claimants against a decedent's estate to establish their claims, and the state probate court will be bound to recognize rights adjudicated by the federal court. The limited probate exception does not preclude jurisdiction over the claims presented in this case.

**<u>Colorado River</u> Abstention**

Because of the obligation of federal courts to exercise jurisdiction when it exists, the pendency of an action in state court that concerns the same matter is not a bar to proceedings in a federal court that has jurisdiction. But under the <u>Colorado River</u> abstention doctrine, a court may abstain from a case that is part of parallel,

duplicative litigation under exceptional circumstances. Saucier v. Aviva Life & Annuity Co., 701 F.3d 458, 462 (5th Cir. 2012), citing Colorado River Water Conservation District v. United States, 96 S.Ct. 1236 (1976).

Billie argues that the court should remand the case pursuant to this doctrine, but that is not permissible. A key requirement of the Colorado River abstention doctrine is that there are parallel proceedings pending in federal and state court. Cases are parallel when they involve the same parties and the same issues. RepublicBank Dallas Nat. Ass'n v. McIntosh, 828 F.2d 1120, 1121 (5th Cir. 1987). The doctrine does not apply here because there are no parallel proceedings pending in federal and state court. Auto Club Family Ins. Co. v. Provosty, 2006 WL 8456463 (E.D. La. 2006) ("The Colorado River abstention doctrine does not apply because the case was removed from state court, and there are no parallel proceedings pending in federal and state court."). Billie filed her summary proceeding regarding the sale of the Rolls Royce in state court, and that proceeding was removed to this court. There is no parallel state court proceeding regarding the sale of the Rolls Royce. There is only one proceeding, not two, and that proceeding is now in federal court.

An additional reason prevents remand based on Colorado River. When the doctrine applies, the proper remedy is a stay or dismissal of the federal case. Most courts favor a stay that allows the state court proceeding to move forward and resolve the issues, with the federal court maintaining jurisdiction so it can resolve any loose ends that remain after the state litigation concludes. As noted, there is no separate state proceeding that would resolve Billie's Rolls Royce conversion claim if this court were to issue a stay; this is the

one and only proceeding that presents that claim. Billie asks the court to remand, but Saucier rejected that option as a remedy in a Colorado River case. "It is clear, though, that remand is not an option." Saucier, 701 F.3d at 465. "In addition to being unsupported by any authority in the removal statute or elsewhere, it is simply illogical." Id. If a court determines under the Colorado River analysis that an existing state court case is an adequate vehicle for the complete resolution of the issues between the parties, "no purpose is served by sending the federal case back to state court to litigate the same issues." Id. at 466.

**Burford Abstention**

Billie's final argument is that her petition should be remanded based on the Burford abstention doctrine. Burford abstention, which "is disfavored as an abdication of federal jurisdiction," is applicable only "in the rare instances when hearing a case within our equity jurisdiction would 'be prejudicial to the public interest.'" Grace Ranch, LLC v. BP America Production Company, 989 F.3d 301, 313-14 (5th Cir. 2021), quoting Burford v. Sun Oil Co., 63 S.Ct. 1098 (1943).

This is not a case that presents only a claim for equitable relief. Billie does ask for a declaration that the donation of the car to her was valid and that Kay's sale of it was an unlawful conversion, but her ultimate goal is an award of money damages for the market value of the car plus other general damages. "[F]ederal courts have the power to dismiss or remand cases based on abstention principles only where the relief being sought is equitable or otherwise discretionary." Quackenbush v. Allstate Ins. Co., 116 S.Ct. 1712, 1728 (1996). Because the claim presented in Quackenbush was one for damages, the Court

held that the district court's remand order "was an unwarranted application of the Burford doctrine." Id. This rule was applied in Webb v. B.C. Rogers Poultry, Inc., 174 F.3d 697, 701 (5th Cir. 1999), where the court rejected Burford abstention and noted, "A damages action, however, allows the court no discretion and may not be remanded." The Burford doctrine is inapplicable because this is a claim for legal, not equitable, relief. The case also does not satisfy the multi-factor Burford test set forth in Grace Ranch.[1]

Billie's principal authority is Estate of Merkel v. Pollard, 354 Fed. Appx. 88 (5th Cir. 2009), which applied Burford abstention sua sponte in an appeal of a domestic dispute. The only part of the judgment at issue on appeal was whether a couple was married or divorced at a particular time. The application of Burford in that unique setting, which was also influenced by the domestic-relations exception, does not warrant a similar result in this damages suit that is merely associated with a succession. The Burford doctrine does not warrant remand.

Accordingly,

It is recommended that Billie Lou Miller's Motion to Remand (Doc. 9) be denied.

---

[1] The five factors are (1) whether the cause of action arises under federal or state law; (2) whether the case requires inquiry into unsettled issues of state law or into local facts; (3) the importance of the state interest involved; (4) the state's need for a coherent policy in that area; and (5) the presence of a special state forum for judicial review. Louisiana does not have a special court or agency for this claim. It is based on state law, but there is no showing that the law related to this conversion claim is unsettled or that there is a strong state interest or need for a coherent policy in the area. The reversal of Burford abstention in Grace Ranch, which involved complex issues of environmental remediation, demonstrates that abstention is not permitted in this rather ordinary conversion case.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 11th day of April, 2022.

Mark L. Hornsby
U.S. Magistrate Judge