UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

BILLIE LOU MILLER                          CIVIL ACTION NO. 22-cv-335

VERSUS                                     JUDGE TERRY A. DOUGHTY

KAREN J MILLER                             MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

### Introduction

Travis Miller died in 2020.  His daughter, Kay Miller, filed a succession proceeding to probate his will, and she was confirmed as executrix.  In her capacity as executrix, Kay sold a Rolls Royce.  Travis' widow, Billie Lou Miller, filed within the succession a summary proceeding petition against Kay that alleged Travis had lawfully donated the car to Billie before his death.  Billie's petition sought a declaration that she was the legal owner of the car and that Kay's sale of it was a wrongful conversion.

Kay removed the summary proceeding—but not the succession proceeding in which it was filed—on the basis of diversity jurisdiction.  Billie filed a motion to remand, which the court earlier denied.  Docs. 15 & 19.  Before the court is Kay's Motion to Dismiss (Doc. 7) on the grounds that Billie's action is untimely.  For the reasons that follow, it is recommended that the motion to dismiss be denied.

### Summary of The Allegations

Billie commenced this action by filing in the succession proceeding a petition titled Summary Proceeding for Declaratory Judgment and for Damages.  Billie alleged that she

and Travis were married in 1997 and lived together in Shreveport for about 23 years.  Billie was 19 years younger than Travis, who had two adult daughters from a prior marriage, and Billie had issues with members of Travis' family, including Kay.  Billie and Travis began living separate and apart in February 2020, but they remained in contact and communication, and Billie had access to the marital home where Travis lived.  Petition, ¶¶ 1-15.

Several days before Travis' unexpected death, he told Billie that he had a surprise for her and asked her to come to his home.  On September 24, 2020, in front of family members, Travis presented Billie with a 2018 Rolls Royce Phantom, which was similar to a 2019 model that Travis had recently bought for himself.  He delivered to Billie both sets of keys to the 2018 car.  She took the car to her house and realized that her carport was too small to protect the car.  Billie arranged with Travis to store the car in his garage until she could build a suitable garage at her home.  ¶¶ 16-28.

Travis died several days later.  According to Billie, Kay quickly changed the locks on Travis' house, refused to allow Billie to participate in funeral preparation, and did not acknowledge her in obituaries.  A little over a week after Travis' death, Kay filed a petition to open his succession.  She was soon confirmed as executrix.  ¶¶ 29-33.

Billie attempted to recover her personal assets, including the Rolls Royce, from the marital home.  Kay rebuffed her efforts.  Billie hired counsel, who learned on or about February 25, 2021 from counsel for Kay that Kay, acting as succession representative, had sold the Rolls Royce to the Hebert Town & Country car dealership.  Although Travis

presented the car to Billie, the registration had remained in the name of Travis Miller, which allowed Kay to sell the car without Billie's involvement.

Billie demanded that Kay recover the car and return it to her, but counsel for Kay advised that he had determined that the Rolls Royce had been sold and was unretrievable. ¶¶ 34-41.  Billie filed this summary proceeding on February 1, 2022 and asked the state court to declare that Travis perfected a valid inter vivos donation of the Rolls Royce to Billie, find that Kay unlawfully converted Billie's property when she sold the car, and award Billie damages for the value of the car plus general damages.  ¶ 46.

**Rule 12(b)(6) and a Timeliness Defense**

In assessing a motion to dismiss based on Fed. R. Civ. Pro.  12 (b)(6), the court must accept as true all well-pleaded facts in the complaint and view those facts in the light most favorable to the plaintiff.  In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007).  This motion does not challenge the sufficiency of the allegations in the complaint.  Rather, it asserts that the claims presented are untimely because the pleading that commenced the action was filed beyond the applicable limitations period.

The statute of limitations is an affirmative defense that "places the burden of proof on the party pleading it."  Frame v. City of Arlington, 657 F.3d 215, 239 (5th Cir. 2011) (en banc).  "Although dismissal under rule 12(b)(6) may be appropriate based on a successful affirmative defense, that defense must appear on the face of the complaint." Alexander v. Verizon Wireless Servs, LLC, 875 F.3d 243, 249 (5th Cir. 2017).

Under federal pleading requirements, "a plaintiff is not required to allege that his claims were filed within the applicable statute of limitations."  Frame, 657 F.3d at 239-40.

That is why a Rule 12(b)(6) motion based on a limitations defense is proper only if the grounds for the defense "clearly appear on the face of the plaintiff's complaint." <u>Songbyrd, Inc. v. Bearsville Records, Inc</u>., 104 F.3d 773, 776 (5th Cir. 1997).

**Analysis**

The parties agree that a Louisiana conversion claim is a tort that is governed by a one-year prescriptive period of La. Civ. Code. art. 3492. <u>Richard v. Wal-Mart Stores, Inc.</u>, 559 F.3d 341, 345 (5th Cir. 2009) (under Louisiana law, "conversion has a one year prescriptive period"). Billie argues that her complaint also supports claims based on acts of a succession representative that are subject to two-year and even ten-year prescriptive periods, as well as an action for revindication under La. Civ. Code. art. 526 that is imprescriptible. Billie also argues that the court should allow her to amend her complaint if it is found lacking, but she does not suggest what amendments she would offer.

Billie could have amended her complaint without leave of court if she had acted promptly after the filing of the motion to dismiss, Fed. R. Civ. Pro. 15(a). Even after that period expired, the court likely would have granted a motion for leave to amend if one had been filed at this early stage of the litigation, but no motion was offered. In any event, the court finds it unnecessary to address whether Billie has or could assert claims other than for conversion or that are subject to a limitations period other than one year. The current complaint does not allow a finding that Billie's conversion claim is prescribed on the face of the pleading.

Prescription on Louisiana law tort claims commences on the day "injury or damage is sustained." La. Civ. Code art. 3492. "Damage is considered to have been sustained,

within the meaning of [Article 3492], only when it has manifested itself with sufficient certainty to support accrual of a cause of action." In re Taxotere (Docetaxel) Prod. Liab. Litig., 995 F.3d 384, 389 (5th Cir. 2021), quoting Cole v. Celotex Corp., 620 So. 2d 1154, 1156 (La. 1993).  Stated another way, prescription begins to run "when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort."  Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp., 748 F.3d 631 (5th Cir. 2014), quoting Campo v. Correa, 828 So.2d 502, 510 (La. 2002).

Billie filed her summary proceeding on February 1, 2022, so the motion to dismiss must be denied unless her pleading demonstrates clearly on its face that prescription began to run before February 1, 2021.  Kay argues that prescription began to run in early October 2020 when Billie was unable to access the marital home because Kay had changed the locks, or between October 2020 and January 2021 when Billie began seeking recovery of the car but was "rebuffed" by Kay.  At the latest, Kay argues, prescription commenced in mid-January 2021 when Billie sent a letter to Kay and her attorney and advised that she wanted to retrieve her items, including the Rolls Royce, but she received no response.

A review of the relevant allegations demonstrates that it is not clear on the face of the pleading that Billie knew she had a claim for conversion prior to February 1, 2021.  The earliest date—on the face of the pleading—on which prescription can arguably be said to have commenced is February 25, 2021, when Kay's attorney told Billie's attorney that Kay had sold the car.  The lack of a facial basis for the limitations defense is demonstrated by a review of Billie's petition.  The relevant allegations are:

29.

On October 2, 2020, a week after delivering the Rolls Royce to Billie, Travis suddenly passed away.

30.

In the days subsequent to his death, Billie was unable to access the marital home, where she had spent many of her days and had left several personal items and memorabilia behind because Kay had changed the locks immediately after Travis' passing.  Kay did not advise Billie of this change.

31.

Kay also refused to allow Billie to participate in the final funeral preparations and burial of her husband, nor was Billie acknowledged as his widow in obituaries confected by Kay.

32.

When attempting to coordinate with Kay regarding the arrangements for her late husband, Billie was shunned by Kay who advised her that her "leaving dad said enough."

33.

A little over a week after Travis' death, Kay filed a *Petition* in this succession to have Travis' Last Will and Testament probated and to affect a confirmation of her as Independent Executrix.  On October 14, 2020, she was confirmed, and Independent Letters were issued to her by this Honorable Court.

34.

While battling the grief of losing her husband, and in spite of Kay's hurtful behavior, Billie began to seek to recover her personal assets at the marital home—including the Rolls Royce he had given her prior to his passing—but was rebuffed primarily by Kay.

35.

After the holidays, in mid-January 2021, Billie wrote and sent a letter to Kay and Kay's counsel (as executrix), Deryl Medlin, advising them of her

desire to retrieve items that belonged to her that remained at the marital home.

36.

Particularly, Billie inquired regarding the 2018 Rolls Royce that Travis had given her prior to his death.  Billie candidly advised Kay and Mr. Medlin that the Rolls Royce was a gift to her from Travis and that she had "texts and pictures" verifying this fact.

37.

Billie received no response from either Kay or Mr. Medlin.

38.

A month thereafter, Billie secured counsel; and, on or about **February 25, 2021**, undersigned counsel spoke with Mr. Medlin regarding the disposition of the Rolls Royce and to advise of his representation of Billie in this Succession.  **At that time, that Mr. Medlin advised Billie, through undersigned counsel, for the first time, that Kay—purporting to act as succession representative, had sold the Rolls Royce to Hebert Town & Country.**  Although Travis gave the Rolls Royce to Billie in late September 2020, the registration of the Rolls Royce was still in the name "Travis Miller", so Hebert Town & Country had no reason to inquire further about the ownership of the Rolls Royce. (Emphasis added).

39.

On March 4, 2021, undersigned counsel memorialized the foregoing in a letter to Mr. Medlin, formally demanding that Kay recover the Rolls Royce and return same to Billie at a "mutually convenient time and place."

40.

Several follow-ups were sent to Mr. Medlin, to which neither Billie nor undersigned counsel received a response.

41.

On or about March 23, 2021, Mr. Medlin advised undersigned counsel via email that, after meeting with Kay the previous week, he had "determined that . . . the Rolls Royce has been sold and is unretrievable."

These allegations do not make it clear on the face of the pleading that a conversion claim is untimely.  Kay argues that Billie should have been aware she had a conversion claim when she was "unable to access the marital home" where she had left several person items because "Kay had changed the locks" after Travis died.  But there is nothing in that rather common action after the death of a homeowner that necessarily, on the face of the pleading, means Billie was then alerted that Kay had taken the Rolls Royce and would not be returning it to her.  Kay contends that Billie's allegation that her efforts to recover assets from the home were "rebuffed primarily by Kay" should have triggered the limitations period.  But being rebuffed is susceptible to multiple meanings, ranging from being ignored to being told "Now is not a good time to visit" to "I'm never giving you that car."

When an allegation relevant to timeliness is susceptible of more than one meaning, the court must read the complaint in the light most favorable to the plaintiff.  Mann v. Adams Realty Co., Inc., 556 F.2d 288, 294 (5th Cir. 1977) (reversing district court that granted Rule 12(b)(6) motion based on a limitations defense).  That precludes the "rebuffed" allegation from being the basis for a limitations-based dismissal.  The same is true of the argument that prescription commenced when Billie sent a letter to Kay and her attorney, asked to retrieve the car, but received no response.  The allegation of a mere lack of a response does not necessarily mean that the damage had manifested itself with sufficient certainty to trigger the limitations period.  Too many assumptions and interpretations against the interests of Billie—which is not allowed in a Rule 12(b)(6)

contest—are required to conclude that the limitations period began earlier than her actual notification that Kay had sole the car.

In such a situation, the limitations defense is not the appropriate basis to grant a Rule 12(b)(6) motion, and the defense "must be resolved through discovery and summary judgment or trial." Frame, 657 F.3d at 240 (vacating district court's dismissal based on limitations grounds).  Similar rules were applied in K-Tek Corp. v. Lovett, 924 F. Supp. 57 (M.D. La. 1996) when a motion to dismiss a conversion claim based on prescription was denied because there were multiple arguable events that triggered the limitations period and it was "not apparent from the face of the complaint whether this suit has prescribed."  Perhaps Kay can establish by motion for summary judgment or at trial that the conversion claim is untimely, but she cannot establish that defense based solely on the face of Billie's pleading.

Accordingly,

It is recommended that Defendant Karen J. "Kay" Miller's Motion to Dismiss (Doc. 7) be denied.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.   See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 13th day of June, 2022.

Mark L. Hornsby
U.S. Magistrate Judge