**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

**BILLIE LOU MILLER**                           **CASE NO.  5:22-CV-00335**

**VERSUS**                                       **JUDGE TERRY A. DOUGHTY**

**KAREN J. MILLER**                             **MAGISTRATE JUDGE HORNSBY**

<u>**MEMORANDUM RULING**</u>

Pending before the Court is a Motion for Summary Judgment [Doc. No. 38] filed by Defendant Karen J. Miller ("Kay") seeking to dismiss the remaining conversion claim made against her by Plaintiff Billie Lou Miller ("Billie Lou"). Billie Lou filed an opposition to Kay's motion [Doc. No. 49], and Kay filed a reply [Doc. No. 51].

For the following reasons, Kay's Motion for Summary Judgment [Doc. No. 38] is **DENIED**.

I.      **BACKGROUND AND PROCEDURAL HISTORY**

On February 1, 2022, Billie Lou filed suit in the First Judicial District Court for declaratory judgment and damages against Kay.[1] Kay subsequently removed the case to this Court on February 2, 2022.[2] In her petition, Billie Lou argues that Kay improperly converted the Rolls Royce that Billie Lou's late husband, Travis Alton Miller ("Travis"), gave her shortly before his death in October of 2020.[3] In her Motion for Summary Judgment, Kay asserts that Billie Lou's claim has prescribed.[4]

---

[1] [Doc. No. 1].
[2] [Id.].
[3] [Doc. No. 1-1 at ¶¶42–46].
[4] [Doc. No. 38 at p.1].

The events leading up to this suit are as follows. Travis and Billie Lou were married in 1999, and they remained married until Travis's death on October 2, 2020.[5] The marriage was neither Travis nor Billie Lou's first.[6] Travis had one biological daughter, Kay, from a previous marriage.[7] Kay and her stepmother Billie Lou were apparently "never" close, and some tension existed in their relationship.[8] According to Kay, Billie Lou filed for divorce in early 2020, and she lived separate and apart from Travis up until his death.[9]

Shortly before his death, Travis purchased a Rolls Royce automobile, the property at issue in Billie Lou's conversion claim here.[10] According to Billie Lou, Travis gave her the Rolls Royce as a gift, on or about September 24, 2020.[11] Billie Lou drove the car several times between the date of the alleged gift and Travis's death, but the car was kept in the garage at Travis's home.[12] While there were allegedly witnesses to the presentation of the Rolls Royce to Billie Lou, Kay asserts that she did not learn about the Rolls Royce until after Travis's death.[13]

When Travis died, Kay took possession of his estate, which included Travis's home.[14] Travis had a testament, naming Kay independent executrix; however, the testament did not mention the Rolls Royce because it was drafted in 2019 before Travis purchased the car.[15] On October 14, 2020, Kay was confirmed as independent executrix of Travis's estate.[16] About a year

---

[5] [Doc. No. 38-1 at p.1–2].
[6] [Id. at p.1].
[7] [Id.].
[8] [Id.].
[9] [Id. at p.2].
[10] [Id.].
[11] [Doc. No. 49 at 2–3].
[12] [Doc. No. 38-1 at p.2].
[13] [Id.].
[14] [Id.].
[15] [Id.].
[16] [Doc. No. 49 at p.3].

and a half later, on February 1, 2022, Billie Lou filed her "Summary Proceeding for Declaratory Judgment and for Damages" in the succession proceeding in state court.[17]

Between Travis's death and the filing of the instant lawsuit, the parties largely agree on the dates that certain communication occurred between Kay and Billie Lou concerning the Rolls Royce. However, the parties disagree as to the import of these communications and their effect on the running of prescription.

Several events are key to the Court's analysis of the prescription issue. First, Kay changed the locks to Travis's home—including the garage—on October 2, 2020, the date of Travis's death.[18] From this point on, Billie Lou never regained access to the Rolls Royce, and she never drove the car again.[19] Apparently there were some conversations between Kay and Billie Lou during the following weeks, but Billie Lou claims that her attempts to reach out to Kay were largely "rebuffed."[20] Next, on December 21, 2020, Billie Lou wrote a letter to Kay, in which she listed "articles [she] would love to have" from Travis's estate.[21] On the fourth page of this letter, Billie Lou stated, "The other thing I want is not a part of the will. It is the last gift [Travis] gave me. The Rolls Royce."[22] Kay never responded to any of the requests made by Billie Lou in this letter.[23]

Sometime in early 2021, about a month after sending the letter, Billie Lou retained counsel to assist with issues surrounding certain property in Travis's estate, including the Rolls Royce.[24] On or about February 25, 2021, in a conversation between the parties' counsel, Billie Lou learned

---

[17] [Id.].
[18] [Doc. No. 38-2 at ¶5].
[19] [Id. at ¶7].
[20] [Doc. No. 1-1 at ¶34].
[21] [Doc. No. 49-5 at p.1].
[22] [Id. at p.4].
[23] [Doc. No. 38-2 at ¶8].
[24] [Doc. No. 38-1 at p.3].

for the first time that Kay had sold the Rolls Royce.[25] As noted above, Billie Lou subsequently filed suit on February 1, 2022.[26]

Early in this litigation, Kay filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that Billie Lou's conversion claim had prescribed.[27] This Court adopted the Report and Recommendation of the Magistrate Judge, denying the Motion to Dismiss.[28] The Court found that it was not "clear on the face of the pleading that Billie [Lou] knew she had a claim for conversion prior to February 1, 2021."[29] The Court further held that "[t]oo many assumptions and interpretations against the interests" of Billie Lou were required to find that prescription had run.[30] The Court thus denied the Motion under Rule 12(b)(6).[31] However, the Court noted that "[p]erhaps Kay can establish by motion for summary judgment or at trial that the conversion claim is untimely," leaving open the possibility of the instant motion.[32]

In her Motion for Summary Judgment, Kay argues that the one-year prescriptive period for conversion claims—which the parties agree applies here—expired before Billie Lou filed her lawsuit, and thus, the lawsuit must be dismissed.[33] According to Kay, the facts show that prescription began running on October 2, 2020, when Kay changed the locks to Travis's home and "first deprived Billie Lou of possession of the Rolls Royce."[34] "At the very latest," Kay asserts that prescription began to run on December 21, 2020, when Billie Lou wrote the letter "demanding the return of the Rolls Royce."[35] Kay argues that, regardless of her own intent regarding the Rolls

---

[25] [Doc. No. 1-1 at ¶38].
[26] [Doc. No. 38-1 at p.3].
[27] [Doc. No. 7].
[28] [Doc. Nos. 22 and 24].
[29] [Doc. No. 22 at p.5].
[30] [Id. at p.10].
[31] [Id. at p.9].
[32] [Id.].
[33] [Doc. No. 38-1 at p.6].
[34] [Id.].
[35] [Id. at p.10].

Royce, Billie Lou knew or should have known that Kay was interfering with Billie Lou's possession of the car more than a year before suit was filed on February 1, 2022.[36]

In response, Billie Lou argues that Kay has failed to satisfy her burden for summary judgment because factual disputes exist concerning when Billie Lou knew or should have known that Kay would not return the Rolls Royce.[37] Billie Lou asserts that neither the events of October 2, 2020 nor December 21, 2020 triggered the prescriptive period because Billie Lou's knowledge of Kay's intent regarding the Rolls Royce was, at best, ambiguous on these dates.[38] Billie Lou also asserts the theory of *contra non valentem*, arguing that Kay's own actions prevented Billie Lou from pursuing her conversion claim.[39]

In reply, Kay asserts that there are no genuine issues of material fact as to the prescription issue because, at the very latest, Billie Lou knew or should have known that she would not regain possession of the Rolls Royce by December 21, 2020.[40] Kay argues that under Billie Lou's interpretation of the facts, prescription does not begin to run "until the tortfeasor disposes of the thing converted."[41] Kay argues that this is not—and cannot be—the law.[42]

The issues are briefed, and the Court is now prepared to issue a ruling.

## II.    LAW AND ANALYSIS

### A.  Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) states:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to

---

[36] [Id. at p.15].
[37] [Doc. No. 49 at p.10].
[38] [Id. at p.12].
[39] [Id. at p.24].
[40] [Doc. No. 51 at p.1].
[41] [Id.].
[42] [Id.].

> any material fact and the movant is entitled to judgment as a matter
> of law. The court should state on the record the reasons for granting
> or denying the motion.

"If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013) (internal quotation marks and citation omitted).; *see also* Fed. R. Civ. P. 56(c)(1).

A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

"[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (*citing Anderson*, 477 U.S. at 248). However, in evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *See Anderson*, 477 U.S. at 255.

The defense of prescription may be raised in a motion for summary judgment. *See e.g.*, *Daigle v. McCarthy*, 238 Fed. App' x. 1 (5th Cir. 2007).

### B.  Analysis

The only question to be decided in this Motion for Summary Judgment is whether there is a genuine issue of material fact concerning the date prescription began to run on Billie Lou's conversion claim against Kay. Because this Court finds that there is an issue of material fact, summary judgment must be denied.

Louisiana Civil Code Article 3492 states that the one-year prescriptive period for delictual actions "commences to run from the day injury or damage is sustained." La. Civ. Code art. 3492. Because conversion actions are delictual actions, "[p]rescription begins to run from the date injury or damage is sustained." *Richard v. Wal-Mart Stores, Inc.*, 559 F.3d 341, 345 (5th Cir. 2009). "The prescriptive period commences on the date the aggrieved party has actual or constructive knowledge of the facts that would entitle him to bring suit." *Jefferson v. Crowell*, 956 So.2d 746, 749 (La. App. 2 Cir. 5/9/07); *see also Campo v. Correa*, 828 So.2d 502, 510 (La. 2002) ("Prescription commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort.").

"A prescriptive period will begin to run even if the injured party does not have actual knowledge of facts that would entitle him to bring a suit as long as there is constructive knowledge of same." *Campo*, 828 So.2d at 510. "Constructive knowledge is whatever notice is enough to excite attention and put the injured party on guard and call for inquiry." *Id.* at 510–11. "Such information or knowledge as ought to reasonably put the alleged victim on inquiry is sufficient to start running of prescription." *Id.* at 511. "Nevertheless, a plaintiff's mere apprehension that something may be wrong is insufficient to commence the running of prescription." *Id.* "The ultimate issue is the *reasonableness* of the [plaintiff's] action or inaction…," as it relates to the surrounding circumstances. *Id.* (emphasis in original).

In the present case, the facts do not clearly establish when Billie Lou had actual or constructive knowledge that a conversion may have taken place with respect to the Rolls Royce on the dates proposed by Kay. In the Court's opinion, the dates put forward by Kay do not definitively show that Billie Lou's claim prescribed by the time she filed suit on February 1, 2022,

7

so as to justify summary judgment on these grounds alone—especially when considering Billie Lou's evidence and argument in opposition.

With respect to October 2, 2020, when Kay changed the locks to Travis's home, it is not clear that Billie Lou knew in that moment that she would never regain possession of the Rolls Royce, or that Kay was intentionally preventing Billie Lou from possessing the Rolls Royce. As the Magistrate Judge stated in the Report and Recommendation on Kay's Motion to Dismiss, "there is nothing in that rather common action after the death of a homeowner that necessarily, on the face of the pleading, means Billie [Lou] was then alerted that Kay had taken the Rolls Royce and would not be returning it to her."[43] According to Billie Lou, she and Travis agreed that the Rolls Royce would remain at Travis's home; thus, Billie Lou did not find anything strange about the car remaining at the home, with or without new locks.[44] Thus, no new evidence produced since this Court's prior ruling establishes that prescription definitively began to run on October 2, 2020; at the very least, a factual dispute exists as to Billie Lou's knowledge as of this date.

Turning to Billie Lou's letter of December 21, 2020, the Court finds another factual dispute. While Kay interprets Billie Lou's letter as a "demand" that Kay return the Rolls Royce, Billie Lou counters that the letter was merely an explanation that the Rolls Royce was "not part of the Succession or part of the will because it was given to her by Travis during his lifetime."[45] Both interpretations of the letter appear reasonable, and, based on Kay's complete lack of response to the letter, it remains unclear at this point in time whether Billie Lou had constructive knowledge that Kay's actions may be tortious, or whether she only had a "mere apprehension that something

---

[43] [Doc. No. 22 at p.8].
[44] [Doc. No. 49 at p.13].
[45] *Compare* [Doc. No. 38-1 at p.10] *with* [Doc. No. 49 at p.14].

may be wrong." *See Campo*, 828 So.2d at 511. The former would trigger prescription, but the latter would not.

Billie Lou remains adamant that she had no idea Kay would not be returning the Rolls Royce until she learned on February 25, 2021 that the car had been sold.[46] Interpreting the evidence in the light most favorable to the nonmovant, Billie Lou has responded to Kay's Motion for Summary Judgment with evidence that establishes a genuine dispute of material fact as to the date prescription began to run, thus making summary judgment inappropriate. *See Anderson*, 477 U.S. at 255.

## III.    CONCLUSION

For the reasons set forth herein,

**IT IS ORDERED, ADJUDGED, AND DECREED** that Kay's Motion for Summary Judgment [Doc. No. 38] is **DENIED**.

MONROE, LOUISIANA, this 12th day of June, 2023.

Terry A. Doughty
United States District Judge

---

[46] [Doc. No. 49 at 16].