UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

BILLIE LOU MILLER                                CASE NO.  5:22-CV-00335

VERSUS                                           JUDGE TERRY A. DOUGHTY

KAREN J MILLER                                   MAGISTRATE JUDGE HORNSBY

MEMORANDUM RULING

Pending before the Court are cross motions in limine: Defendant Karen "Kay" Miller's Motion in Limine to Exclude Inadmissible Hearsay Statements of Travis Miller [Doc. No. 56] (hereafter referred to as "Defendant's Motion in Limine") and Plaintiff's Motion in Limine [Doc. No. 57].  Plaintiff, Billie Lou Miller ("Billie Lou") opposes Defendant's Motion in Limine [Doc. No. 72].  Defendant, Karen Miller ("Kay") opposes Plaintiff's Motion in Limine [Doc. No. 71].

For the following reasons, Defendant's Motion in Limine is **GRANTED**.  Plaintiff's Motion in Limine is **GRANTED IN PART AND DENIED IN PART.**

I.      BACKGROUND

On February 1, 2022, Billie Lou filed suit in the First Judicial District Court for declaratory judgment and damages against Kay.[1]  Kay subsequently removed the case to this Court on February 2, 2022.[2]  In her petition, Billie Lou argues that Kay improperly converted the Rolls Royce that Billie Lou's late husband, Travis Alton Miller ("Travis"), gave her shortly before his death in October of 2020.[3]

---

[1] [Doc. No. 1].
[2] [Id.].
[3] [Doc. No. 1-1 at ¶¶42–46].

The events leading up to this suit are as follows. Billie Lou married Travis on or about June 28, 1997.[4]  Kay is the only biological child of Travis and is the stepdaughter of Billie Lou.[5]  Kay has two daughters: Miranda and Maria Larocca.[6]  Pamela Jean Clark ("Pam") is the adoptive daughter of Travis and the stepdaughter of Billie Lou.[7]  Matt Clark is Pam's husband, and Luke Thaxton is Pam's son.[8]  Around February of 2020, Billie Lou moved out of Travis's home and filed for divorce.[9]  By August 2020, Billie Lou had started to occasionally stay overnight at Travis's home.[10]

On or about September 20, 2020, Travis purchased a 2018 Rolls Royce Phantom for $315,000.00.[11]  The dealership sold the Rolls Royce with an "open" title and did not designate a purchaser or owner.[12]  Billie Lou was included as a named insured for the vehicle along with Travis.[13]

On September 24, 2020, Travis presented Billie Lou with this Rolls Royce at the home of Pam Clark, Travis's adoptive daughter.[14]  Pam and Matt Clark witnessed this presentation, and Pam took photographs and a video.[15]  Billie Lou did not have any space to store the car at this time.[16]  A week later, on October 2, 2020, Travis died.[17]  After his death, Kay was named executrix of Travis's succession, and, as executrix, she titled the Rolls Royce in the name of the Succession

---

[4] [Doc. No. 64 §D, ¶ 1].
[5] [Doc. No. 64 §D, ¶ 3].
[6] [Doc. No. 64 §D, ¶ 6].
[7] [Doc. No. 64 §D, ¶ 4].
[8] [Doc. No. 64 §D, ¶ 5].
[9] [Doc. No. 64 §E, ¶ 4; §F, ¶ 12-13].
[10] [Doc. No. 64 §D, ¶ 7].
[11] [Doc. No. 64 §D, ¶ 8].
[12] [Doc. No. 64 §D, ¶ 4, 18].
[13] [Doc. No. 64 §D, ¶ 17].
[14] [Doc. No. 64 §D, ¶ 9-11].
[15] [Doc. No. 64 §D, ¶ 11-12].
[16] [Doc. No. 64 §D, ¶ 22].
[17] [Doc. No. 64 §D, ¶ 16].

of Travis Alton Miller.[18]  Kay changed the locks to the former matrimonial domicile of Billie Lou and Travis after his death.[19]

On February 5, 2021, Kay sold the Rolls Royce to Hebert's Town and Country for $300,000.00.[20]  She deposited these funds into a succession bank account.[21]  Billie Lou learned of this sale on February 25, 2021.[22]  On March 4, 2021, Billie Lou's counsel sent a letter to Deryl Medlin, Kay's counsel for the succession, demanding Kay recover the Rolls Royce and return it to Billie Lou.[23]  On March 23, 2021, Mr. Medlin informed Billie Lou that the Rolls Royce was "unretrievable."[24]  Billie Lou, Kay, and the Estate resolved ancillary succession issues pending in Florida at the end of 2021 and/or beginning of 2022.[25]  Ultimately, however, the Rolls Royce issue was not resolved, and Billie Lou filed a *Summary Proceeding for Declaratory Judgment and for Damages* in state court.[26]  Kay removed the action to this Court.[27]

At issue in these motions in limine are numerous statements made by Travis, orally and through contemporaneous documents, to other witnesses, and to the parties regarding the Rolls Royce and Travis's intentions in giving said automobile to Billie Lou.

## II.   ORAL STATEMENTS AND TEXT MESSAGES BETWEEN BILLIE LOU AND TRAVIS REGARDING THE ROLLS ROYCE

In Defendant's Motion in Limine, Kay seeks to exclude oral statements and text messages between Billie Lou and Travis regarding the Rolls Royce.[28]  Kay argues the admission of these

---

[18] [Doc. No. 64 §D, ¶ 19, 28].
[19] [Doc. No. 64 §D, ¶ 21].
[20] [Doc. No. 64 §D, ¶ 27].
[21] [Doc. No. 64 §D, ¶ 29].
[22] [Doc. No. 64 §D, ¶ 24].
[23] [Doc. No. 64 §D, ¶ 30].
[24] [Doc. No. 64 §D, ¶ 32].
[25] [Doc. No. 64 §D, ¶ 35].
[26] [Doc. No. 64 §D, ¶ 35-36].
[27] [Doc. No. 64 §D, ¶ 36].
[28] [Doc. No. 56, p. 1].

documents would violate La.R.S. § 13:3721, more commonly known as the Dead Man's Statute, and that such documents constitute inadmissible hearsay.[29]  Billie Lou argues the Dead Man's Statute does not apply to her conversion claim and that hearsay exemptions and exceptions exist for the evidence she wishes to offer.[30]  As explained below, the Court finds the Dead Man's Statute bars the admission of any parol evidence, which includes both the alleged oral statements and the text messages.  Accordingly, Defendant's Motion in Limine is **GRANTED**.

### a.  The Dead Man's Statute Applies to This Claim.

First, the Dead Man's Statute should be applied in this action under the *Erie* doctrine.  This doctrine holds that federal courts sitting in diversity must apply the substantive law of the forum state to state law claims.  *Gasperini v. Ctr. for Humans., Inc*., 518 U.S. 415, 416 (1996).  "Classification of law as 'substantive' or 'procedural' for Erie purposes is sometimes a challenging endeavor."  *Id*.  The outcome-determinative test provides that a court should determine if disregarding the state law would significantly affect the ultimate result of the litigation.  *Id*.  If the outcome would be affected, a court sitting in diversity must apply state law.  *Id*.  In conducting this analysis, the court should also consider "the twin aims of the *Erie* rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws." *Id*., quoting *Hanna v. Plumer*, 380 U.S. 460, 468 (1965).  *See also All Plaintiffs v. All Defendants*, 645 F.3d 329, 335-36 (5th Cir. 2011).  Failing to apply the Dead Man's Statute in this action would not only likely affect the ultimate result of the litigation but would also encourage Louisiana plaintiffs to forum shop.

The Dead Man's Statute prevents the admission of "[p]arol evidence … to prove any debt or liability of a deceased person against his succession representative, heirs, or legatees when no suit to enforce it has been brought against the deceased prior to his death" unless the plaintiff meets

---

[29] [Doc. No. 56-1, p. 1].
[30] [Doc. No. 72, p. 8-9].

certain procedural requirements.  La.R.S. § 13:3721.  This type of parol evidence often comes in the form of the decedent's own statements relating to a potential debt or liability (as is the case here), so admission of such statements can greatly affect the outcome of a state claim. Unsurprisingly, then, failing to apply the Dead Man's Statute in a federal diversity action based on such a state claim would encourage forum shopping as it would allow plaintiffs to introduce a myriad of evidence that would otherwise be barred in state court to prove their state law claims, thus giving them a more favorable opportunity to win their case.  Failing to apply the statute would also result in an inequitable administration of law as it would create inconsistent results for state law claims based on whether they are pled in state or federal courts.  Further, the Court notes that the Dead Man's Statute has already been applied by federal courts sitting in diversity in both Louisiana and other states.[31]

Having determined that the Dead Man's Statute would be applied under *Erie*, the Court now turns to the pending motions in limine.   Billie Lou cites several cases for the broad assertion that the Dead Man's Statute is not applicable to tort actions generally and thus should not apply to her conversion claim.[32]  However, as explained below, the Court does not agree that these cases hold the Dead Man's Statute *never* applies to a tort claim.[33]  Further, even if the Dead Man's

---

[31] *See Lee v. Hunt*, 483 F. Supp. 826, 838 (W.D. La. 1979) (stating "The Court already has held that the Louisiana Dead Man's Statute … applies to the instant case"); *Estate of Genecin ex rel. Genecin v. Genecin*, 363 F.Supp.2d 306, 313 (D. Conn. 2005) (stating that "as the [Connecticut] Dead Man's Statute is a rule of substantive law and not purely an evidentiary principle, the statute applies in diversity cases under the rule of *Erie*"); *Kilmer v. Gustason*, 211 F.2d 781, 782-83 (5th Cir. 1954) (finding lower court did not err in permitting testimony since such testimony did not implicate a "transaction" within the meaning of the Florida's Dead Man's Statute); *United States v. Diehl*, 460 F. Supp. 1282, 1289 (S.D. Tex.), aff'd, 586 F.2d 1080 (5th Cir. 1978) (stating "the applicability of state Dead Man Acts in federal court is limited to diversity actions"); *Stricker v. Morgan*, 158 F. Supp. 830, 837 (S.D. Miss. 1958), aff'd, 268 F.2d 882 (5th Cir. 1959) (noting plaintiff was prohibited from testifying to prove his claim under the Dead Man's Statute).

[32] *See generally* [Doc. No. 57, Doc. No. 72].

[33] Billie Lou also relies on cases in which Louisiana circuit courts have found the Dead Man's Statute does not apply to suits to correct or annul a sale. The Court again does not find these cases persuasive. These cases allowed parol evidence in situations where both parties were alleging mutual error or mistake. See *Cordova v. Cordova*, 382 So. 2d 1050, 1051 (La. Ct. App. 1980) (allowing the introduction of parol evidence that reflected the parties' true intent); *Hallaron v. Pinewood Mall Shopping Ctr.*, Inc., 504 So. 2d 922, 927 (La. Ct. App. 1987) (holding the Dead

Statute does not apply to tort actions generally, Billie Lou's conversion claim is rooted in a contractual obligation to which the Dead Man's Statute applies.

The Court acknowledges that some Louisiana circuit courts have not applied the Dead Man's Statute in negligence claims.  *See Honeycutt v. Indiana Lumbermens Mut. Ins. Co*., 130 So. 2d 770, 773 (La. Ct. App. 1961) (opining the Dead Man's Statute "is not applicable" to a negligence action to recover damages related to an automobile accident)[34]; *Cagle v. Loyd*, 617 So. 2d 592, 598 (La. Ct. App.), *writ denied sub nom. Cagle v. Succession of Loyd Through Administrators*, 620 So. 2d 877 (La. 1993) (relying on *Honeycutt* and holding the Dead Man's Statute "is not applicable to a tort action" in a negligent misrepresentation case).  These cases all presented clear tort claims.  They did not involve, even tangentially, a potential contractual obligation or a determination of ownership of property as is the case in the action here.  Further, in *Smith v. Anderson,* 563 So. 2d 380, 383 (La. Ct. App.), *writ denied*, 567 So. 2d 105 (La. 1990), another case relied upon by Billie Lou, the court explicitly stated "[i]t is arguable whether or not La.R.S. § 13:3721 is applicable to a tort case (like the instant case)."  This statement suggests the law in this area is not as settled as Billie Lou argues.

One of the more persuasive cases offered by Billie Lou is *Savoie v. Rogers' Est*., 394 So. 2d 704, 706 (La. Ct. App.), *writ granted sub nom. Savoie v. Est. of Rogers*, 399 So. 2d 597 (La. 1981), and vacated, 410 So. 2d 683 (La. 1981).  In this case, the plaintiffs argued on appeal that La.R.S. 13:3722 (the companion statute to the Dead Man's Statute) did not apply to their "tortious conversion" claim.  *Id*.  The appellate court disagreed and instead found plaintiffs brought a

---

Man's Statute does not apply to a "suit to … to reform the deed to show the true agreement").  Conversely, this case does not involve an alleged sale.  Nor does Billie Lou or Kay allege "mutual error" or some other mistake regarding any actions taken with the Rolls Royce.  As such, these cases are not illustrative as to whether the Dead Man's Statute applies to an action for conversion of a corporeal movable allegedly given to the plaintiff before the decedent died.

[34] In *Honeycutt*, the plaintiffs wanted to admit the testimony of one of the passengers regarding the driver's alleged negligence.

contractual action.  Specifically, it noted that "[n]either the allegations of plaintiffs' petition nor the evidence that they presented at the trial support their argument that this is an action for the wrongful conversion of their property."  *Id*.

This case appears to suggest the Dead Man's Statute would not apply to a tortious claim for conversion.  Even accepting this statement as dicta, the Court does not agree the Dead Man's Statute never applies to a conversion claim.  In a conversion claim, the court's "preliminary determination … must be the ownership of the property."  *Seals v. Lucien*, 282 So. 3d 1148, 1151 (La. App. 4th Cir. 2019), quoting *Worthy v. McClelland*, 995 So.2d 636, 639 (La. App. 4th Cir. 2008).  Certainly, it may be possible to bring a conversion claim in which parol evidence is not necessary to establish ownership of the purportedly converted property.  In such a case, the Dead Man's Statute may not apply.

But that is not the case here.  Billie Lou must prove ownership of the Rolls Royce to prevail on her conversion claim.  If Travis did not validly donate the car to her, her claim for conversion will falter.  As such, the contractual obligation between Travis and Billie Lou is the very crux of this case.  Because this case does not require the resolution of a tort claim alone and will additionally require the admission of testimony as to whether Travis donated the Rolls Royce, the cases above are not persuasive.

*Adams v. Carter*, 393 So.2d 253, 255 (La. Ct. App. 1980), *writ denied*, 398 So. 2d 531 (La. 1981) may help illustrate this point.  In this case, the court did not apply the Dead Man's Statute to a claim for reimbursement.  *Id*.  The appellate court stated this claim is "not based on a promise or a service or any other transaction of a contractual nature.  'It is an obligation established by law.'" *Id*.  The *Adams* court did not hold that the Dead Man's Statute is inapplicable to every

tortious claim.  Instead, it noted that the claim at issue was not a transaction or obligation that was "of a contractual nature."  *Id*.

Conversely, in this case, Billie Lou's claim includes an issue that is contractual in nature: whether Travis donated the Rolls Royce to Billie Lou.  Billie Lou cannot prove her conversion claim without proving she is the owner of the Rolls Royce, and she cannot prove she is the owner of the Rolls Royce without proving Travis donated the Rolls Royce to her.  A donation *inter vivos* claim is not some obligation that arises naturally from the relationships between parties, as was the case in *Adams*.  To prove this donation, Billie Lou must present evidence regarding statements purportedly made by Travis.  Where the plaintiff seeks to introduce statements from the decedent to prove a donation, such evidence should trigger the Dead Man's Statute as it requires the determination of whether a transaction occurred that created an obligation.

Further, the Dead Man's Statute has been applied in a case to determine ownership of property.  *Succession of Pohlmeyer*, 192 So. 2d 870, 872 (La. Ct. App. 1966).  In this case, the executor of the estate sought a disclaimer that certain stock certificates were not part of the estate.  *Id*. at 871.  The trial court held the Dead Man's Statute barred the admission of any parol evidence to prove ownership of the stock certificates.  *Id*.  The appellate court agreed, noting that applying the Dead Man's Statute in these circumstances supported the statute's purpose in protecting the "assets of a succession from stale and unfounded claims which the deceased could have refuted if she were alive to defend herself."  *Id*. at 873.

In so finding, the *Pohlmeyer* court relied on a Louisiana Supreme Court case that applied an earlier version of the Dead Man's Statute[35] to bar the admission of parol evidence to prove

---

[35] The following cases applied Act No. 207 of 1906, as amended by Act No. 11 of 1926. This statute held "[t]hat Parol evidence shall be incompetent and inadmissible to prove any debt or liability upon the part of a party deceased, if a suit upon the asserted indebtedness or liability shall have been brought more than twelve (12) months after the death of the deceased."

ownership of property.  In *Succession of De Loach*, 204 La. 805, 808 (1943), the plaintiffs sought a declaratory judgment recognizing them as the owners of a house.  The Louisiana Supreme Court applied the earlier version of the Dead Man's Statute to this claim and rejected the plaintiff's argument that it did not apply to their "suit to recover property as distinguished from a debt or liability."  *Id*. at 811.  The court acknowledged the broad definition of "debt" used by the court in *Laterriere v. Bd. of Levee Comm'rs of Orleans Levee Dist*., 182 La. 1060, 1065-66 (1935) (defining debt as "that which one person is bound to pay or perform for another", "money, goods, or services; that which one person is bound to pay to another, or to perform for his benefit; thing owed; an obligation or liability", or "in its popular sense [it] includes all that is due to a man under any form of obligation or promise").  The *De Loach* court noted "plaintiffs are seeking to hold the estate of their father 'liable for the delivery of the house in question, [so] the case falls squarely within the provisions of the statute."  *Succession of De Loach*, 204 La. at 812.  Preventing the admission of parol evidence thus satisfied "[t]he obvious purpose of the Act … to protect the assets of the decedent from stale and unfounded claims which the deceased might have refuted by his testimony were he alive to defend himself."  *Id*.  at 811.  *See also Succession of Harris*, 177 La. 1049, 1052 (1933) (applying the older version of the Dead Man's Statute to prevent the admission of parol evidence in an action to recover either a money judgment for the value of a bracelet or the return of the bracelet purportedly bought by the plaintiff).

The Court notes that one circuit court has not applied the Dead Man's Statute to a declaratory judgment action involving ownership of property.  In *Succession of Theriot*, 532 So. 2d 260, 261 (La. Ct. App. 1988), the plaintiffs sought a declaratory judgment naming them as owners of property included in the inventory of the estate.  The appellate court held "Louisiana's Dead-Man Statute … does not apply to the instant situation. [Plaintiff] is not seeking to enforce a

9

claim against the Succession … nor has she alleged that she is a creditor of the … Estate." *Id.* at 263. Instead, the plaintiff merely sought a "judgment declaring her the owner of property which she alleges is her property and which she alleges was incorrectly included in the inventory of the Trahan estate." *Id.*

Certainly, the facts in *Succession of Theriot* are similar, but the Court finds the reasoning of *Succession of Pohlmeyer* to be more persuasive. In *Succession of Theriot*, the plaintiff was not seeking to enforce a claim against the succession and rather sought *only* a declaratory judgment that property in the inventory of the estate belonged to the plaintiff. Conversely, this suit is seeking monetary damages against Kay in her individual capacity and her capacity as executrix. Billie Lou also opposed Kay's motion to dismiss the claim against her in her capacity as executrix because Kay may have acted in her capacity as executrix to dispose of property she believed was an estate asset.[36] Further, if Billie Lou cannot prove ownership of the Rolls Royce, the Rolls Royce was properly an asset of the estate that could be properly disposed of by Kay.[37] It seems clear that this suit is, at least in part, a claim directly against the succession representative, Kay Miller.

Additionally, like in *Succession of Pohlmeyer*, parol evidence would need to be admitted here to determine "whether a succession possesses title to certain property or whether the title thereto reposes in a third person." *Succession of Pohlmeyer*, 192 So. 2d at 872. The Dead Man's Statute is designed to protect the assets of a decedent's estate. *See Moore v. Moore*, 2012-959 (La. App. 3 Cir. 4/10/13), 116 So. 3d 18, 28 *writ denied*, 2013-1065 (La. 6/21/13), 118 So. 3d 421. Courts must strictly construe the statute to effectuate this purpose. *Smith*, 563 So. 2d at 383. To

---

[36] [Doc. No. 28, p. 13-14 (arguing that "dismissing Ms. Kay in her capacity as executrix is also improper because, at this point in the litigation, it is not yet known whether the actions by Ms. Kay … were (a) in the good faith, but mistaken, belief in managing what she, as executrix, believed to be the assets of the estate; or, (b) whether they were in bad faith in order to harm Ms. Billie Lou")]

[37] The parties have also stipulated that Kay titled the Rolls Royce in the succession's name. The funds received from selling the Rolls Royce were also deposited into a succession bank account. *See* [Doc. No. 64 §D, ¶ 28, 29].

10

limit this statute to only claims for monetary debts would cut against this purpose because it would allow plaintiffs to seize assets, through artful drafting of their complaints, that would have otherwise gone to the decedent's estate.  Both claims for monetary debts and declaration of ownership of property may require a court to consider parol evidence in the form of a decedent's purported words and actions.  In both claims, a decedent, were he still alive, may have been able to refute the claims.

Ultimately, the Court finds the Dead Man's Statute applies to this action.  To allow Billie Lou to use a tort claim to avoid the Dead Man's Statute and prove an obligation with parol evidence would cut against the statute's purpose.  The resolution of this conversion case requires a determination as to whether an obligation existed between Billie Lou and Travis.  If Travis were able to testify, he may have been able to refute Billie Lou's claim.  Allowing parol evidence here would thus allow a plaintiff to prove a "debt or liability" using the words and actions of a deceased person.

**b.  The Dead Man's Statute Bars Parol Evidence in This Case.**

Having found the Dead Man's Statute does apply, the Court must next determine to what extent it applies.  The Dead Man's Statute bars parol evidence to prove a debt or obligation when no suit was brought while the deceased was still alive unless certain procedural requirements are met within one year of the decedent's death.  More specifically:

> Parol evidence shall not be received to prove any debt or liability of a deceased person against his succession representative, heirs, or legatees when no suit to enforce it has been brought against the deceased prior to his death, unless within one year of the death of the deceased:
> (1) A suit to enforce the debt or liability is brought against the succession representative, heirs, or legatees of the deceased;
> (2) The debt or liability is acknowledged by the succession representative as provided in Article 3242 of the Code of Civil Procedure, or by his placing it on a tableau of distribution, or petitioning for authority to pay it;

11

> (3) The claimant has opposed a petition for authority to pay debts, or a tableau of distribution, filed by the succession representative, on the ground that it did not include the debt or liability in question; or
> (4) The claimant has submitted to the succession representative a formal proof of his claim against the succession, as provided in Article 3245 of the Code of Civil Procedure.

La.R.S. § 13:3721.

Travis died on October 2, 2020.[38]  No suit was brought prior to Travis's death, meaning Billie Lou must satisfy one of the procedural requirements outlined above to introduce parol evidence in this action.  Billie Lou admitted that the State Court Petition filed on February 1, 2022, was the first civil action filed regarding the vehicle.[39]  As such, she did not bring "[a] suit to enforce the debt or liability … against the succession representative, heirs, or legatees of the deceased" within a year of Travis's death pursuant to La.R.S. § 13:3721(1).  Nor does it appear that the succession ever acknowledged the Rolls Royce belonged to Billie Lou, placed the Rolls Royce on a tableau of distribution, or petitioned a court to pay Billie Lou for the Rolls Royce or return it to her.  Therefore, La.R.S. § 13:3721(2) has not been satisfied either.  Additionally, the record before the court does not establish Billie Lou ever "opposed a petition for authority to pay debts, or a tableau of distribution, filed by the succession representative, on the ground that it did not include the debt or liability in question" pursuant to La.R.S. § 13:3721(3).  Finally, Billie Lou admitted she did not file a sworn proof of claim to the succession representative and thus La.R.S. § 13:3721(4) was also not satisfied.[40]  Based on the record, it does not appear that Billie Lou complied with the statutory requirements for the introduction of parol evidence here.  As such, all parol evidence to prove a debt or obligation is barred.

---

[38] [Doc. No. 64, §D, ¶ 16].
[39] [Doc. No. 56-1, p. 6].
[40] [Doc. No. 56-1, p. 8-9].

Parol evidence has been defined as "[a] word; speech; hence, oral or verbal. Expressed or evidenced by speech only; as opposed to by writing or by sealed instrument." *Moore*, 116 So. 3d at 28. *See also Halpern v. Jonathan Ferrara Gallery, Inc.*, 2019-1066 (La. App. 4 Cir. 12/30/20), 365 So. 3d 568, 573, *writ denied*, 2021-00285 (La. 4/13/21), 313 So. 3d 1253 (defining parol evidence as "oral testimony, and documents outside of what is written within a document, that is used as evidence to show intent or clarify what is written in the document").

In this case, no written agreement or contract exists. The alleged donation *inter vivos* was made verbally in the presence of two witnesses. Travis did not execute an act of donation, and the vehicle itself was purchased under an "open title" in which no owner had yet been named. Billie Lou seeks to prove the donation by manual delivery. The Court has found no cases directly on point for this case. However, in *Bank of Logansport v. Sewell*, 467 So. 2d 1217, 1220 (La. Ct. App. 1985), the court suggested parol evidence can exist even without an accompanying writing. In that case, the court discussed *Succession of Dean*, which had found that "in the absence of a decedent's written promise to pay, or written acknowledgment of a debt, a debt against a decedent's estate may be proved by parol testimony [assuming the requirements of the Dead Man's Statute are met]." *Succession of Dean*, 375 So. 2d 162, 164 (La. Ct. App.), *writ denied sub nom*. *Succession of Dean.*, 376 So. 2d 1272 (La. 1979). The *Bank of Logansport* court interpreted this statement as implying "that parol evidence may be used to prove a decedent's debt when there is no written promise to pay." *Bank of Logansport*, 467 So. 2d at 1220. The court thus found that the Dead Man's Statute did not apply where the plaintiff presented a written promise to pay because such promise, in itself, was not parol evidence. *Id*. The Court finds this statement suggests that, even where no written agreement or acknowledgment is before the court, certain types of evidence would still be considered "parol" evidence under the Dead Man's Statute. Accordingly,

even though there is no formal writing or contract before the Court in this case, certain evidence may still be considered parol evidence.

Further, the text messages sent between Travis and Billie Lou are not a formal writing or contract to which the definition of parol evidence would not apply.  Billie Lou has not alleged these specific text messages are the basis of the donation *inter vivos*.  Billie Lou has repeatedly pointed to the presentation of the Rolls Royce on September 24, 2020, as the basis for donation *inter vivos* claim and has stated this is an oral agreement.[41]  These text messages were sent several hours later, on September 25, after the donation had allegedly already been made, and Billie Lou has argued the text messages merely confirmed the oral agreement.[42]  As such, the text messages had no legal effect beyond reiterating the alleged oral donation by Travis.

Additionally, to hold the Dead Man's Statute does not apply to text messages like the ones before the Court would cut against the purpose of the statute.  As discussed above, the Dead Man's Statute was designed to protect the "assets of a succession from stale and unfounded claims which the deceased could have refuted if she were alive to defend herself."  *Succession of Pohlmeyer*, 192 So. 2d at 873.  The statute must be strictly construed to effectuate this purpose.  *Smith*, 563 So. 2d at 383.  If the text messages are not parol evidence simply because no other 'formal' writing exists, other claimants may be able to present claims against successions where no formal agreement ever existed simply because they had written something, whether that be in a letter, text, or e-mail.  Put differently, cases where no written agreement exists would be treated more favorably than ones in which a written agreement exists, even though the same types of "parol" evidence would be introduced in both.  The Court finds such a result to be inconsistent with the purpose of the Dead Man's Statute.  A claimant should not be able to circumvent the procedural

---

[41] [Doc. No. 57-1, p. 10].
[42] [Doc. No. 57-1, p. 11].

requirements of the Dead Man's Statute simply because his agreement was oral.  Such claims present the same concerns of reliability as ones in which the agreement was written.

This point is reinforced by *Successions of Marcotte*, 449 So. 2d 732 (La. Ct. App. 1984). In this case, the trial court allowed the plaintiff to admit "a handwritten document of dates and expenses compiled [by the plaintiff]" and "a summary of [the plaintiff's] expenses" to prove the existence of the decedent's debt.  *Id*. at 734.  On appeal, the court held such evidence was inadmissible, stating "[t]he decedent can no longer defend himself against the claims of the alleged creditor."  *Id*. at 735.  Such "written" proof was simply not admissible under the Dead Man's Statute.  *See also Succession of Dykes*, 258 So. 2d 606, 611 (La. Ct. App. 1972) (barring the admission of "the testimony of the claimants and their wives, or two unverified written summaries of the alleged services and expenses.  Those claims have not been legally proved and must be rejected").  The Court concedes that the text messages here are purportedly authored by the decedent himself and not by the plaintiff as was the case in *Marcotte*.  However, to allow this type of written proof would similarly present the same concerns of a decedent being unable to defend himself.

Finally, even though the alleged donation *inter vivos* occurred orally, Billie Lou cannot introduce those statements since they, too, are barred by the Dead Man's Statute.  These statements are clearly verbal and are not "writings" at all.  The admission of such oral statements would also cut against the purpose of the Dead Man's Statute as it would, again, allow claimants to present oral contractual claims, which present even stronger reliability concerns than written contractual claims, against the succession to establish a debt or liability.

In sum, the Court finds that both the text messages and the oral statements that Billie Lou seeks to admit are barred under the Dead Man's Statute because Billie Lou did not comply with

the procedural requirements outlined in La.R.S. § 13:3721. As such, Defendant's Motion in Limine is **GRANTED**.

### III.   ORAL STATEMENTS AND CONTEMPORANEOUS DOCUMENTS BETWEEN TRAVIS AND DEFENDANT AND NON-PARTY WITNESSES REGARDING THE ROLLS ROYCE

In Plaintiff's Motion in Limine, Billie Lou seeks to exclude evidence she deems "irrelevant" or "inadmissible." Before addressing the specific types of evidence Billie Lou wants to exclude, the Court must address the Dead Man's Statute. Billie Lou cites the Dead Man's Statute in her motion in limine. However, this statute applies to claimants seeking to prove the existence of a debt or liability (as discussed above). It does not apply to defendants who seek to disprove a debt or liability against the estate as is the case here. Accordingly, any argument by Billie Lou that the Dead Man's Statute should prevent Kay from introducing evidence about the purported donation *inter vivos* is misplaced and therefore will not be addressed in this section.

Billie Lou seeks to exclude all evidence as to (1) her character and unworthiness; (2) whether Travis gave the Rolls Royce to her to induce her to return to his home; (3) whether Travis placed a suspensive condition on his gift; and (4) whether Travis could renege on the gift. She argues the only "relevant" and "admissible" evidence for the purported donation is testimony of the donee (Billie Lou); testimony of those present at the presentation of the Rolls Royce to Billie Lou (Pam and Matt Clark); photographs taken during the presentation; and messages sent between Travis and Billie Lou in the hours following the presentation of the Rolls Royce.

These categories of evidence are addressed in turn below.

### a.   Evidence as to Billie Lou's Character and Unworthiness

Billie Lou seeks to exclude all evidence relating to both her character and alleged "unworthiness" because it is not relevant to the issues. She argues that Kay seeks to introduce evidence suggesting Billie "was not and is not deserving of the gift." Additionally, she believes

16

Kay will introduce evidence about how Billie Lou was "disliked" by the family.  The Court agrees that evidence as to Kay's, or a witness's, belief that Billie was "unworthy" or "undeserving" of the Rolls Royce is irrelevant to the issues here.

Per FED. R. EVID. 401, relevancy is defined as having "any tendency to make a fact more or less probable than it would be without evidence and the fact is of consequence in determining the action."  In this action, the Court must determine whether Kay tortiously converted the Rolls Royce.  Kay may only be found liable for conversion if Billie Lou became the owner of the Rolls Royce through Travis's alleged donation.  To prove a donation *inter vivos* by manual delivery, as Billie Lou wishes to do here, Billie Lou must present "strong and convincing proof that the donor had the intent to irrevocably divest himself of a thing and that delivery was made."  *Cimino v. Capps*, 48,122 (La. App. 2 Cir. 6/26/13), 117 So. 3d 573, 575; *Crawford v. Reagan*, 34,417 (La. App. 2 Cir. 2/28/01), 779 So. 2d 1116, 1121.  The donee (here, Billie Lou) has the burden of proving donative intent.  *Cimino*, 117 So. 3d at 575.  In other words, evidence as to both manual delivery and donative intent is "relevant" for claims that involve the validity of a donation *inter vivos*.

Whether Kay, or any other witness, believes Billie Lou "deserved" a Rolls Royce is not relevant for determining whether Travis, the *donor*, actually donated the Rolls Royce to Billie Lou.  Testimony regarding their beliefs as to "worthiness" or whether she "deserved" such a gift does not make it more or less probable that Travis donated the car to her in the first place nor is such testimony a "fact in consequence" in this action as it has no bearing on *Travis's* intent.  Similarly, whether Kay or other family members "liked" or "disliked" Billie Lou has no bearing on whether Travis donated the Rolls Royce to Billie Lou.  Accordingly, such evidence should not be presented in this action because it is barred by FED. R. EVID. 401.

17

The Court notes that what may appear to be this sort of irrelevant character evidence may, quite possibly, also go towards the issue of donative intent and whether Travis intended to make a gratuitous donation to Billie Lou.  Evidence as to "duress" and "undue influence" may also present similarly to character evidence.  However, unlike the evidence discussed above, this evidence would indeed be relevant to the issue of whether a valid donation occurred (although the introducing party would still need to show the admissibility of such evidence under the Federal Rules of Evidence).

Without specific examples of the type of character evidence Billie Lou believes Kay will present, it is difficult to make a more conclusive ruling.  Therefore, **IT IS ORDERED** that Kay shall not admit character evidence for the purpose of showing Billie Lou did not "deserve" the Rolls Royce or that family members other than Travis disliked Billie Lou or believed she did not deserve such a gift.

### b.  Relevance of Evidence as to Travis's Intent Generally

Billie Lou also generally seeks to limit evidence of Travis's intent to the moment he provided her the gift and the hours immediately after.  She urges that the fact finder may only consider evidence "that occurred at the time of the confection (as confirmed/ratified in writing via text messages").  Conversely, Kay argues that courts can consider events and statements that were made both before and after the donation as such evidence is highly probative for the issue of donative intent.

The crux of this disagreement between Billie Lou and Kay is whether evidence related to donative intent is limited temporally to the exact or near contemporaneous moments of the donation.  The Court agrees with Kay that evidence of a donor's intent both before and after the alleged donation is "relevant" for determining whether a donation occurred.  In other words,

evidence of donative intent is *not* temporally limited to the exact or nearly contemporaneous moment of donation.

"In order to show that a manual gift was made, there must exist strong and convincing proof that a donor had the intent to irrevocably divest himself of a thing and that delivery was made." *Terrell v. Terrell*, 26,863 (La.App.2d Cir.05/10/95), 655 So.2d 600, 603.  In the broadest sense, statements that a donor makes before and/or after a donation may have the tendency to make the fact of donative intent more or less probable and would thus be relevant.

Courts have not limited themselves to consider evidence of a donor's acts and statements to the exact or nearly contemporaneous moments of a donation.  Instead, courts have held that "[t]he donor's outward acts, together with any admissible evidence of the relationship of the parties, are important to prove a manual donation." *Crawford*, 779 So. 2d at 1121-22.  *See also Cimino*, 117 So. 3d at 576 (finding that "Capps' testimony regarding the situation surrounding the vehicle certainly indicated that Cimino's outward acts, considering their close and longstanding relationship, showed he intended to make a donation").  Clearly, then, courts have considered the existence and type of relationship between parties in determining whether donative intent existed and have not limited the inquiry into the relationship to the exact moment of donation.

Additionally, courts have considered the actions of the donor *after* the alleged donation to determine both whether a donation occurred and whether the donor had the requisite donative intent.  *See Crawford*, 779 So. 2d at 1122 (finding a reasonable factual basis for donative intent based on the facts that "Son had helped her pay for the travel trailer as a gift, and that they both enjoyed using it … [and] he had helped pay for burglar bars and gravel for her camp, because he enjoyed using the camp and spent a lot of time there"); *Redmon v. Lindsey*, 2018-51, *1, *4 (La. App. 3 Cir. 6/6/18) (considering text messages stating the car was a gift, the fact that the donor did

not include the car in the list of items he wanted her to return (after the car had allegedly been given to her), and the fact that the alleged donor "did not demand payment for the car until Ms. Lindsey continued to refuse to give into his demands to engage in a romantic relationship"); *In re RedPen Properties, LLC*, No. CIV.A. 11-702-DEW, 2013 WL 3293635, *1, *7 (M.D. La. June 28, 2013), *aff'd sub nom. In re RedPen Properties, L.L.C.*, 568 F. App'x 338 (5th Cir. 2014) (considering the fact that the alleged donors maintained corporeal possession of the antiques and statements made on bankruptcy filings *after* the donation); *Succession of Simpson*, 311 So. 2d 67, 73 (La. Ct. App.), *writ denied sub nom. Succession of Simpson*, 313 So. 2d 839 (La. 1975) (considering the fact that the alleged donor "never gave up possession of her home"); *Anderson v. Aetna Life & Cas.*, 535 So. 2d 1070, 1071 (La. Ct. App. 1988), writ denied, 536 So. 2d 1256 (La. 1989) (finding the donors lacked donative intent because the donors "never moved out of the house and continued to treat the property as belonging to them personally").

Courts have also considered the testimony of *third parties* as to the "generous" character of the donor, the relationship of the parties, and statements made by the donor in determining whether donative intent existed. *See Crawford*, 779 So. 2d at 1122 (considering the testimony of the donor's child describing "her father as a generous man who enjoyed making people happy if he could, which tends to support a finding that Son had the requisite donative intent to make such manual gifts to Melinda"); *Redmon*, 2018-51, *4 (La. App. 3 Cir. 6/6/18) (considering the testimony of both the defendant's sister and son "that [the plaintiff] told them he was going to buy the car as a gift for Ms. Lindsey"); *Succession of Butler*, 425 So. 2d 1332, 1334 (La. Ct. App. 1983) (finding that no oral contract for services existed after considering, in part, testimony from third parties indicating that "the relationship between appellant and decedent was not that of

20

employer-employee but was of a close personal nature" and "that no one else but the appellant believed that she was taking care of the decedent for any reason other than personal affection").

Taken together, these cases suggest that "relevant" evidence is not limited to the parties of the donation itself and to those present at the donation.  Nor are courts temporally constrained to only consider evidence of the donor's intent at the moment of the donation itself.  As such, to the extent the Plaintiff's Motion in Limine seeks to exclude *all* evidence that does not come from those present at the donation regarding actions and statements said only at that donation, such motion is **DENIED**.

Additionally, Billie Lou has argued that testimony and evidence regarding a suspensive condition or Travis's ability to renege on the donation is irrelevant.  The Court notes that only the former category of potential evidence appears to be at issue.  Kay's motion in limine did not discuss any testimony being offered to prove that Travis reneged on the donation.  Further, in the Joint Proposed Pretrial Order, Kay's arguments regarding the donation are that it was not a donation or, if found to be a donation, that it was a donation subject to a suspensive condition.  There does not appear to be any argument or proffered evidence supporting that Travis "reneged" on the alleged gift, and the Court will not consider hypothetical evidence that is not before it.

As for evidence related to whether a suspensive condition existed, such evidence may be relevant for the issues before the Court.  A "donor may impose on the donee any charges or conditions he pleases."  La. Civ. Code Ann. Art. 1528.  Further, "[a] donation inter vivos may be … dissolved for the nonfulfillment of a suspensive condition."  La. Civ. Code Ann. Art. 1556.  A donation subject to a suspensive condition dissolve "of right when the condition can no longer be fulfilled."  La. Civ. Code Ann. Art. 1562.  Because the presence of a suspensive condition directly bears on whether a donation *inter vivos* was effectuated between Travis and Billie Lou (and the

extent of that donation), such evidence is relevant.  Accordingly, to the extent that Plaintiff's Motion in Limine seeks to exclude *all* evidence related to a suspensive condition, such motion is **DENIED**.

### c.  Admissibility of Specific Proffered Testimony and Evidence

The Court will now consider the specific testimony and evidence discussed in both Plaintiff's Motion in Limine and Defendant's Response to Plaintiff's Motion in Limine.  Other evidentiary concerns not raised in these motions will be addressed either at trial or in a subsequent motion in limine.

### *1.  E*-Mail Exchange Between Doug Rogers and Kay Miller After the Presentation of the Rolls Royce

Billie Lou believes Kay will introduce an e-mail exchange between Doug Rogers and Kay Miller in which they discussed communications Doug Rogers had with Billie Lou after the presentation and with Travis in September before the presentation.[43]  However, based on the Joint Proposed Pretrial Order, it appears any objections related to this e-mail exchange have been resolved.  In this filing, the parties included the e-mail exchange on their joint exhibit list, and no objections to this exhibit were attached or stated.

However, if either party still objects to this evidence, the Court will address this e-mail at trial where it can determine the purpose for which such evidence is being proffered.  Plaintiff's Motion in Limine only raises this e-mail as an example of documentary evidence related to Travis's intent, and Defendant's response makes no mention of this e-mail.  Hearsay exceptions may exist depending on the reason for admission.  Accordingly, the Court finds the admissibility of this evidence (if still in dispute) is better addressed at trial and declines to make a holding on admissibility in this order.

---

[43] KMILLER 0163-169 or Exhibit 13 to the January 19, 2023, deposition of Kay Miller

**2.** **Testimony by Kay, Luke Thaxton, and Others About Conversations They Had with Travis After the Presentation and Testimony by Kay, Luke Thaxton, Pam Clark, Doug Rogers, or Others About Their Impressions or Beliefs About Travis's Intentions in Giving Billie Lou the Rolls Royce**

Plaintiff's Motion in Limine did not provide specific examples of this type of evidence because, at the time of the filing, Billie Lou was unsure whether Kay intended to introduce this evidence at trial. However, in the Response to Plaintiff's Motion in Limine, Kay Miller mentions six individuals (Matt Clark, Luke Thaxton, Doug Rogers, Pam Clark, Maria Larocca, and Miranda Larocca) who will testify about conversations they allegedly had with Tavis regarding his intentions with the Rolls Royce. The Court believes this testimony falls within the category of evidence Billie Lou sought to exclude in her motion in limine and will discuss them in turn. Ultimately, the Court finds that this evidence is both relevant and admissible under FED. R. EVID. 803(3), which provides a hearsay exception for the admission of a "statement of the declarant's then-existing state of mind (such as motive, intent, or plan)."

First, based on the depositions before the Court, it appears that Matt Clark will testify about Travis telling him that he was using the car as "leverage" to get her to move back in with him. The Court finds this portion of the deposition is admissible. This testimony is relevant since courts may consider the testimony of third persons regarding statements the donor made about their intentions for purposes of determining donative intent (as is the case here). *See Redmon*, 2018-51, *4 (considering the testimony of both the defendant's sister and son "that [the plaintiff] told them he was going to buy the car as a gift for Ms. Lindsey"). Additionally, this evidence goes directly towards Travis's state of mind and whether he had the requisite intent to irrevocably divest himself of the Rolls Royce gratuitously and without conditions, and as such is allowed under FED. R. EVID. 803(3). Accordingly, Billie Lou's motion in limine is **DENIED** as to this evidence.

Second, based on the deposition before the court, Luke Thaxton, who helped Travis begin titling the Rolls Royce, will testify that Travis wanted to give Billie Lou "the gift so that she would come back to him and be with him."  This, and the other similar statements regarding Travis's intentions, are admissible.  Again, this testimony is relevant since courts may consider the testimony of third persons regarding statements the donor made about their intentions for purposes of determining donative intent (as is the case here).  *See Redmon*, 2018-51, *4.  This testimony also bears directly on Travis's then-existing state of mind and is thus allowed under FED. R. EVID. 803(3).  Accordingly, the motion in limine is **DENIED** as to this evidence.

Third, based on the deposition before the Court, Doug Rogers, who was Travis's insurance agent, will testify that on the day before Travis presented the Rolls Royce to Billie Lou, Travis said in his conversation with State Farm that he was giving the Rolls Royce to Billie Lou "so that she may not divorce him."  Once again, and for the same reasons expounded above, this evidence is both relevant and admissible because it goes towards Travis's then-existing state of mind. Accordingly, the motion in limine is **DENIED** as to this evidence.

Fourth, based on the deposition before the Court, it appears that Pam Clark will testify that after Travis allegedly gave Billie Lou the gift, he told Billie Lou, in the presence of Pam Clark, that the Rolls Royce was not her car.  Such evidence is clearly relevant towards the issue of donative intent because courts have considered the actions of the donor after the alleged donation to determine if a donation occurred and if the donor had donative intent.  *See generally Crawford*, 779 So. 2d 1116; *Redmon*, 2018-51; *In re RedPen Properties, LLC*, No. CIV.A. 11-702-DEW, 2013 WL 3293635; *Succession of Simpson*, 311 So. 2d 67; and *Anderson*, 535 So. 2d 1070.  If Travis retained possession of the keys and told Billie Lou the car was not hers, such evidence directly bears on the issue of whether he truly intended to gratuitously donate the car.  Additionally,

this evidence is admissible under at least one hearsay exception as it bears directly on Travis's then-existing state of mind under FED. R. EVID. 803(3).  Accordingly, the motion in limine is **DENIED** as to this evidence.

Fifth, based on the deposition of Maria Larocca, it appears that she will testify that Travis told her he was simply letting Billie Lou use the car as opposed to him donating it to her.  For the same reasons expressed above, the Court finds this evidence is both relevant and admissible as it bears directly on Travis's then-existing state of mind and whether he had the requisite donative intent to donate the Rolls Royce to Billie Lou.  Accordingly, the motion in limine is **DENIED** as to this evidence.

Sixth, based on the deposition before the Court, it appears that Miranda Larocca will testify that Travis told her prior to the presentation of the Rolls Royce that he was buying the vehicle for himself.  Once again, the Court finds this evidence is both relevant and admissible as it bears directly on Travis's then-existing state of mind.  Accordingly, the motion in limine is **DENIED** as to this evidence.

Finally, the Court notes that Kay stated many of these statements were "memorialized in contemporaneous texts, emails, and other written recordings by the witnesses referenced above." This evidence was not presented to the Court in these motions in limine, so this ruling does not bear on the admissibility of such evidence.  Additionally, Kay's response mentioned evidence relating to the character of Travis and his relationship with Billie Lou.  Because none of that evidence has been presented to the Court in anything other than general terms, the Court has not, and will not, determine the admissibility of such evidence.

> ***3.*** **Letter Written by Doug Rogers to Kay Miller, dated July 2, 2021, at the Request of Kay Recounting a Communication Between Doug and Travis Miller on September 25, 2020, and Attached Documents**

Billie Lou also mentions a letter written by Doug Rogers to Kay Miller recounting a conversation between Doug and Travis Miller.[44]   This letter was dated several months after the original communication.   Both the letter and the statements within would be hearsay, and an exception must exist for each for such statements to be admissible.   FED. R. EVID. 805.   The statements in the letter itself may go towards Travis's state of mind and thus fall under the hearsay exception in Fed. R. Evid. 803(3).   However, the Court does not know on what basis Kay plans to introduce such evidence because this letter was not discussed in Kay's response.   Additionally, only Billie Lou (the objecting party in this motion in limine), and not Kay, has placed this letter on an exhibit list, so it does not appear that Kay will even introduce this evidence at trial. Accordingly, the Court declines to make a decisive ruling on this letter and will instead address any evidentiary concerns at trial if such evidence is proffered.

## IV.     CONCLUSION

For the reasons set forth herein,

**IT IS ORDERED** that Defendant's Motion in Limine [Doc. No. 56]  is **GRANTED** in its entirety. The Dead Man's Statute applies to this action, and Billie Lou did not comply with the procedural requirements that would allow her to admit parol evidence in this action. Accordingly, both the oral statements and text messages between Travis and Billie Lou relating to the donation and his intentions with said donation are excluded.

**IT IS FURTHER ORDERED** Plaintiff's Motion in Limine [Doc. No. 57] is **GRANTED IN PART** and **DENIED IN PART**. To the extent Plaintiff's Motion in Limine moves to prevent Kay's witnesses from testifying regarding the conversations they had with Travis about his intentions with the Rolls Royce, Plaintiff's Motion in Limine is **DENIED**.

---

[44] [Doc. No. 64-2, p. 4] *See generally* [Doc. No. 64-3].

**IT IS FURTHER ORDERED** that to the extent Billie Lou moves for witnesses to not be able testify as to their personal beliefs related to Billie Lou's "worthiness" of the alleged gift, Plaintiff's Motion in Limine is **GRANTED**.

**IT IS FURTHER ORDERED** that other evidentiary concerns, such as contemporaneous documents and evidence of Billie Lou's and Travis's relationship, will be addressed at trial.

MONROE, LOUISIANA, this 12th day of September 2023.

Terry A. Doughty
United States District Judge