UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

**BILLIE LOU MILLER**                              **CASE NO. 5:22-CV-00335**

**VERSUS**                                         **JUDGE TERRY A. DOUGHTY**

**KAREN J MILLER**                                 **MAGISTRATE JUDGE HORNSBY**

**MEMORANDUM RULING**

Pamela "Pam" Clark will be unable to attend the trial in this matter. In lieu of live testimony, the parties submitted a transcript of her deposition testimony to chambers. This transcript included the parties' objections to questions and answers therein. In the interest of trial efficiency, the Court will rule on those objections in this memorandum ruling.

**I.    DEFENDANT'S OBJECTIONS**

First, Defendant Karen Miller ("Kay" or "Defendant") objected to the following as being speculative:

> **Q** Okay. And you thought it was gonna be a gift of this Rolls-Royce to --
> **A** Correct.
> **Q** -- to Billie Lou?
> **A** Correct.[1]

Plaintiff Billie Lou Miller ("Billie Lou" or "Plaintiff") responded that Pam's opinion was rationally based on Fed. R. Evid. 701; that it was unaided, eyewitness testimony; and that it provided additional foundation as to Fed. R. Evid. 701. Defendant's objection is **SUSTAINED**.

Second, Kay objected to the following as being barred by the Dead Man's Statute:

---

[1] Pam Clark Depo, p. 58, line.11-15. The deposition does not have a document number because it has not been entered into the record yet. The parties are going to introduce the deposition transcript into the record at trial.

> **Q** And then he said, "But the RR is still yours with no attachments or expectations." Do you see that?
> **A** Mm-hmm.
>    MR. JONES:
>    Objection.
> BY MR. HARPER continuing:
> **Q** Is that yes?
> **A** Yes.
> **Q** "It truly was a love gift." You see that?
> **A** Yes.[2]

Billie Lou responded by referring the court to her motion for the Court to reconsider its ruling on the motions in limine [Doc. No. 81] and stated that the text messages could be admitted as impeachment. Defendant's objection is **SUSTAINED**.

Third, Kay objected to the following as being barred by the Dead Man's Statute:

> **Q** And then, further down in the text exchange at 9:29 AM, he says, again, "It was truly a gift of love. No strings." You see that?
> **A** Mm-hmm. Yes.
> **Q** And you are seeing these now for the first time today?
> **A** That is correct.
> **Q** Okay. Do you see anything in these text messages that's inconsistent with the observations that you saw in the photographs on Matt Clark #3, presentation of the automobile? This is all consistent with that, right?
> **A** Yes.[3]

Billie Lou responded by referring the court to her motion for the Court to reconsider its ruling on the motions in limine [Doc. No. 81] and stated that the text messages could be admitted as impeachment. Defendant's objection is **SUSTAINED**.

Fourth, Kay objected to the following as being speculative:

> **Q** After he presented it to her, was it clear he had bought it for her?
> **A** I assumed. It was not clear. I assumed.[4]

---

[2] Pam Clark Depo, p. 78, line 25, p. 79, lines 1-9.
[3] Pam Clark Depo, p. 79, lines 15-25, p. 80, lines 1-2.
[4] Pam Clark Depo, p. 94, lines 22-24.

Billie Lou responded that the opinion was rationally based on Fed. R. Evid. 701; that it was unaided, eyewitness testimony; and that it provided additional foundation as to Fed. R. Evid. 701. Defendant's objection is **SUSTAINED**.

Fifth, Kay objected to the following as being barred by the Dead Man's Statute:

> **Q** Would you assume that if they said that it's a gift of love, no strings attached, the Rolls-Royce is yours, would you assume it was his -- yours?
> **A** I didn't know anything about that conversation.[5]

Billie Lou responded that the Dead Man's Statute does not apply to a live declarant party subject to cross-examination; that the opinion was rationally based on Fed. R. Evid. 701; that it was unaided, eyewitness testimony; and that it provided additional foundation as to Fed. R. Evid. 701. Defendant's objection is **SUSTAINED**.

Sixth, Kay objected to the following as being barred by the Dead Man's Statute:

> **Q** For the record, this is a letter from Billie Lou Miller to Deryl Medlin, Kay and Miranda. And on page four of this, there's some – She makes some statements about the Rolls being hers and that she has text messages from Travis saying that it was hers with no strings attached, so forth. You see that?
> **A** I see it.[6]

Billie Lou responded that the Dead Man's Statute does not apply to a live declarant party subject to cross-examination; that the opinion was rationally based on Fed. R. Evid. 701; that it was unaided, eyewitness testimony; and that it provided additional foundation as to Fed. R. Evid. 701. Defendant's objection is **SUSTAINED**.

Sixth, Kay objected to the following as being barred by the Dead Man's Statute:

> **Q** And did anyone tell you that Billie Lou claimed to have text messages and pictures of texts which verifies it was a gift with no string attached? Did anyone ever tell you that part?

---

[5] Pam Clark Depo, p. 99, lines 5-8.
[6] Pam Clark Depo, p. 109, lines 23-25, p. 110, lines 1-5.

> **A** I don't recall.[7]

Billie Lou responded that the Dead Man's Statute does not apply to a live declarant party subject to cross-examination; that the opinion was rationally based on Fed. R. Evid. 701; that it was unaided, eyewitness testimony; and that it provided additional foundation as to Fed. R. Evid. 701. Defendant's objection is **SUSTAINED**.

Seventh, Kay objected to the following as being barred by the Dead Man's Statute:

> **Q** And turns out she has these text messages from Travis that say, "This is your gift of love with no strings attached." Right?
>     MR. JONES:
>     Objection, speculation.
> BY MR. HARPER continuing: (witness answering)
> **A** Right. I don't know if that -- if those text messages were before or after he said it wasn't her car, 'cause I don't -- I can't remember the date.
> **Q** Well, does it matter, Pam? If he gave it to her, no strings attached, do you -- in your view, was he entitled to say, "No, I --
> **A** Take it back?
> **Q** -- "I take it back. It's mine now"?[8]

Billie Lou responded that the Dead Man's Statute does not apply to a live declarant party subject to cross-examination; that the opinion was rationally based on Fed. R. Evid. 701; that it was unaided, eyewitness testimony; and that it provided additional foundation as to Fed. R. Evid. 701. Billie Lou further referred the court to her motion for the Court to reconsider its ruling on the motions in limine [Doc. No. 81] and stated that the text messages could be admitted as impeachment. Defendant's objection is **SUSTAINED**.

## II.     PLAINTIFF'S OBJECTIONS

First, Billie Lou objected to the following as being irrelevant under Fed. R. Evid. 403 since it pertains to unworthiness:

---

[7] Pam Clark Depo, p. 110, lines 15-19.
[8] Pam Clark Depo, p. 111, lines 6-19.

> **Q** Did you ever have conversations with Travis or Billie Lou about either of them having extramarital affairs?
> **A** Yes.
> **Q** Let's start with Travis. Was Travis faithful to Billie Lou, as far as you know?
> **A** As far as I know, yes.
> **Q** What about Billie Lou? Was she faithful to Travis, as far as you know?
> **A** No.
> **Q** What do you know about that?
>> MR. HARPER:
>> Counsel, could I ask you to tie this to a time period.
>> MR. JONES:
>> During their marriage.
>> MR. HARPER:
>> Pardon?
>> MR. JONES:
>> During their marriage.
>> MR. HARPER:
>> No, I'm gonna ask you to tie it to a time period that's relevant to this case, or you and I are gonna step outside and have a talk. You're not gonna put this witness through all of this for nothing.
> BY MR. JONES continuing: (witness answering)
> **A** Yes, I know of two occasions, of two people.
> **Q** You know when about that was?
> **A** That was towards the end of their marriage.
> **Q** And what do you know about that?
> **A** I know that she had sex with a guy named Jim, who was the gardener, and then there was -- I don't remember the other guy's name. He was the handyman.
> **Q** How do you know that?
> **A** She told me in -- as her friend in confidence.[9]

Kay responded that this testimony went towards impeachment and that it was relevant to the nature of the relationship between putative donor and donee. Plaintiff's objection is **SUSTAINED**.

Second, Billie Lou objected to the following as being irrelevant under Fed. R. Evid. 403 since it pertains to unworthiness:

---

[9] Pam Clark Depo, p. 119, line 25, p. 120, lines 1-25, p. 121, lines 1-11.

**Q** When did these alleged affairs occur? After Billie Lou moved out?
**A** No, they were before. She was still living with Daddy.
**Q** What year? He died in 2020.
**A** I'd say -- He died October 2020. '19. Maybe even '20. They were …
**Q** Near the end when she was thinking about moving out?
**A** Yeah, I would think so.
**Q** And what discussions were had between Billie Lou and Travis about these affairs? Or do you know?
**A** My dad didn't know about 'em.
**Q** And how do you know that?
**A** Because had he known about 'em, he would've blown a gasket. I mean, there's no telling what he would've done. He put her in jail one time over a slap. So, if he had've known that she had affairs --
**Q** He would've been abusive to her?
**A** He would've kicked her outta the house.
**Q** Okay.
**A** And then taken her out of the Will and, I mean, yeah, he would've tried to destroy --
**Q** (cross-talk) How does Kay know about these affairs?
**A** I didn't know Kay wasn't aware. Kay didn't know about the affairs.
**Q** Well, her lawyer, who you've never talked to before and never had an email with, never had a phone conversation with --
**A** I --
**Q** -- knows about 'em. Who have you told about these matters that were confided by your loving friend Billie Lou?
**A** I mean, aren't there some kinda, like, lawyer privileges that you can tell your lawyer that you don't have to tell anyone else?
**Q** Yes ma'am, there are. But I understand your testimony earlier today is you don't have a lawyer. Who all did you tell about these affairs and when?
**A** I told Luke.
**Q** After this litigation started?
**A** Yes. After the litigation started.
**Q** About the time you got your subpoena?
**A** Yeah, because I wanted to know what kind of questions I was gonna be asked.
**Q** Mm-hmm. And so, what other sort of dirt did Luke wanna dig up about Billie Lou?
**A** (NO AUDIBLE RESPONSE)[10]

---

[10] Pam Clark Depo, p. 121, lines 24-25, p. 122, lines 1-25, p. 123, lines 1-22.

6

Kay responded that this testimony went towards impeachment and that it was relevant to the nature of the relationship between putative donor and donee. Plaintiff's objection is **SUSTAINED**.

### III.	CONCLUSION

Having considered the objections set forth in the Clark Deposition, **IT IS ORDERED** that all objections are **SUSTAINED.** Accordingly, the objected-to testimony outlined above will not be admissible at trial.

MONROE, LOUISIANA, this 13th day of October 2023.

Terry A. Doughty
United States District Judge